**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **WHIRLPOOL CORP. and**<br>**WHIRLPOOL PROPERTIES, INC.**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**SHENZHEN   SANLIDA   ELECTRICAL**<br>**TECHNOLOGY CO., LTD., and**<br><br>**SHENZHEN AVOGA TECHNOLOGY**<br>**CO. LTD.**<br><br>      **Defendants.** | **Case No. _____**<br><br><br>**JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

Whirlpool Corporation and Whirlpool Properties, Inc. (hereinafter collectively referred to as "Whirlpool" or "Plaintiff") file this Complaint against Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") and Shenzhen Avoga Technology Co. Ltd. ("Avoga") (collectively, "Defendants") and in support thereof, allege as follows:

## INTRODUCTION

1.      The American system of free enterprise encourages and rewards creativity, innovation, investment and hard work. That system relies on fair competition, the bounds of which are protected by law and the Courts.

2.      Defendants violated these basic tenets of fair competition by trading on the goodwill that Whirlpool enjoys among the consuming public for its best-selling KITCHENAID® brand stand mixers. That goodwill exists as a result of Whirlpool's innovation, investment, marketing and hard work over many years.

3.      Whirlpool is a leading global developer of home appliances and accessories under the KITCHENAID brand. Whirlpool Properties, Inc., a wholly-owned subsidiary of Whirlpool Corp., licenses the KITCHENAID trademark to Whirlpool Corp. for kitchen appliances, and to other third parties for kitchen accessories, cookware, culinary tools, and textiles, among other products.   Whirlpool is a creative and innovative company. It has developed premium appliance products that it markets under creative and distinctive trademarks, including trademarks related to its stand mixers.

4.      Whirlpool has made significant investments in the design and development of its premium appliances and innovative, distinctive marks to distinguish its products from those of its competitors.

5.    Whirlpool and its predecessors-in-interest have used the well-known KITCHENAID trademark in connection with home appliances and accessories, including household stand mixers, in the United States since 1919.

6.    What has become the iconic shape of KITCHENAID stand mixers evolved from the first model in 1919 to the current model first introduced as the "Model K" in 1937, a distinctive, innovative design created to appeal to a broader scope of consumers and distinguish it from other mixers on the market ("the KITCHENAID Stand Mixer design"). Shown below, the KITCHENAID Stand Mixer design is most widely known and recognized today for its sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base:



7.    Rather than create their own distinct stand mixer designs, Defendants recently introduced stand mixer designs nearly identical to the iconic KITCHENAID Stand Mixer design and have been selling them throughout the United States, including the State of Texas.

8.     Defendant Sanlida introduced the stand mixers shown below, which it has been selling on popular online marketplaces such as Amazon and Wayfair, in direct competition with the KITCHENAID Stand Mixer design.





9.     Defendant Avoga introduced the stand mixer shown below, which it has been selling on popular online marketplaces such as Amazon and Wayfair, in direct competition with the KITCHENAID Stand Mixer design.

10.     In an effort to capitalize on Whirlpool's continued success in the marketplace, Defendants offer products that mimic Whirlpool's distinctive KITCHENAID Stand Mixer design and utilize its widely known and recognized shape, including its sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base.

11.     Rather than develop their own unique aesthetic from all the design possibilities available, Defendants chose and intended to imitate Whirlpool's iconic and distinctive KITCHENAID Stand Mixer design.  Defendants' copying is an intentional and unfair attempt to trade on the goodwill of Whirlpool and confuse consumers.

12.     Whirlpool and consumers are being harmed, and will continue to be harmed, by the confusing similarity between the Defendants' recently introduced stand mixer designs and the distinctive KITCHENAID Stand Mixer design used by Whirlpool for over 80 years.

13.     Whirlpool prays that the Court enjoin Defendants from continuing its trademark and trade dress infringement, trademark dilution, and acts of unfair competition as set forth herein.

## THE PARTIES

14.     Plaintiff Whirlpool Properties, Inc. is a Michigan corporation having its principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan 49085. Whirlpool Properties, Inc. owns the U.S. trademark registrations at issue in this action.

15.     Plaintiff Whirlpool Corp. is a Delaware corporation, having its principal office and place of business at 2000 N M-63, Benton Harbor, Michigan 49022.    Whirlpool Corporation is a licensee of the registered trademarks and trade dress that are at issue in this action and which are owned by Whirlpool Properties, Inc.   Whirlpool Properties, Inc. and Whirlpool Corp. shall be collectively referred to as "Whirlpool" or "Plaintiff" herein.

16.     On information and belief, Defendant Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") is a Chinese corporation.  According to information provided to Amazon, Sanlida has a registered principal place of business at Room 101, Building A, No. 27, Jiangjunmao Residence Community, Long Gang Street, Long Gang District, Shenzhen City, Guangdong Province, China.

17.     On information and belief, Defendant Shenzhen Avoga Technology Co. Ltd. ("Avoga") is a Chinese corporation.  According to information provided to Amazon, Avoga has a registered principal place of business at 17B-11, Building No. 3, Block 2, Da Chong Business Center (Area 1), No. 9676 Shen Nan Road, Nanshan District, Shenzhen City, Guangdong Province, China.

18.     Sanlida's and Avoga's infringing stand mixers are available for sale throughout the United States, including in the Eastern District of Texas.

19.     Whirlpool products bearing the KITCHENAID Stand Mixer design are also available for sale throughout the United States, including in the Eastern District of Texas and

the same channels through which Defendants offer their stand mixers.

## NATURE AND BASIS OF ACTION

20.     This is an action for trademark and trade dress infringement, dilution, and unfair competition in violation of Sections 32(1), 43(a) and 43(c) of the federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and (c), and under the laws of the State of Texas.  Whirlpool seeks, among other things, temporary, preliminary, and permanent injunctive relief, actual damages, an accounting of Defendants' profits, enhanced damages, and recovery of Whirlpool's reasonable costs and attorneys' fees.

## JURISDICTION

21.     Plaintiff asserts the following federal claims: Count I, Federal Trademark Infringement (15 U.S.C. § 1114(1)); Count II, Trade Dress Infringement (15 U.S.C. § 1125(a)); and Count III, Federal Unfair Competition (15 U.S.C. § 1125(a)), Count IV, Federal Dilution, (15 U.S.C. § 1125(c)), and Counts V-VIII, related Texas State law claims.

22.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Whirlpool's claims under Texas law.

23.     This Court has personal jurisdiction over Defendants based on their sale of goods that infringe on Whirlpool's trademarks and trade dress in the Eastern District of Texas, causing injury to Whirlpool in this state and district.

24.     If either Defendant – both foreign entities – contends it cannot be sued in the forum state and fails to identify facts supporting jurisdiction in any other state where suit is possible, this Court also has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) because: (i)

Whirlpool's claims arise, in part, under federal law; (ii) Defendants each have sufficient contacts with the United States because Defendants import their products into the United States and offer them for sale to United States consumers; and (iii) exercising jurisdiction over Defendants is consistent with due process.

25.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c).  Moreover, Defendants are Chinese corporations with no offices within the United States and, therefore, may be sued in any federal court, including this judicial district.

## FACTUAL BACKGROUND

### Whirlpool and Its Business

26.     Whirlpool sells products bearing the KITCHENAID Stand Mixer design to consumers through an online retail store at www.kitchenaid.com as well as Amazon.com, Wayfair.com, and other online retailers. Products bearing the KITCHENAID Stand Mixer design are also sold in brick-and-mortar stores through distributors and major third-party retailers, including Williams-Sonoma, Bed Bath and Beyond, Home Depot, Walmart, Target, Crate and Barrel, and Best Buy.

27.     Whirlpool widely and prominently advertises products bearing the KITCHENAID Stand Mixer design in the marketplace, including television, print media, retail displays, online (e.g. www.kitchenaid.com, Amazon.com, and the websites of major retailers and distributors), and social media (e.g. Facebook, Twitter, and Instagram).

28.     Currently, Whirlpool's KitchenAid brand social media accounts, which frequently promote the KITCHENAID Stand Mixer design, have over 800,000 followers on Facebook (https://www.facebook.com/KITCHENAID/), over 400,000 followers on Instagram (https://www.instagram.com/kitchenaidusa/), and over 89,000 followers on Twitter

(https://twitter.com/KITCHENAIDUSA).

29.     Whirlpool has sold millions of units bearing the KITCHENAID Stand Mixer design, generating billions of dollars in revenues.

30.     Whirlpool has expended hundreds of millions of dollars in advertising its KITCHENAID brand, the majority of which prominently featured and displayed the KITCHENAID Stand Mixer design.

31.     The Whirlpool KITCHENAID Stand Mixer design appears prominently in numerous top-rated shows such as Magnolia Network's Magnolia Table with Joanna Gaines, NetFlix's Nailed It!, Bravo's Top Chef, and the Kelly Clarkson Show.   The Whirlpool KITCHENAID Stand Mixer design appears in publications and social media from celebrity chefs and leading cooking influencers, such as the Barefoot Contessa, Ina Garten.

32.     For decades, the KITCHENAID Stand Mixer design has received unsolicited, third-party media attention that references the iconic shape and design, as well as numerous industry awards and recognitions, including from publications such as the Smithsonian.

**Whirlpool's Asserted Rights**

33.     In order to protect the extensive goodwill Whirlpool enjoys in the KITCHENAID Stand Mixer design, Whirlpool applied to register it with the U.S. Patent and Trademark Office ("USPTO").  After Whirlpool submitted substantial evidence to the USPTO showing that the KITCHENAID Stand Mixer design is recognized by consumers and the trade as signifying high quality goods originating exclusively from Whirlpool, it was approved for registration. Accordingly, U.S. Trademark Registration No. 1,711,158 ("the '158 Registration") was issued for the KITCHENAID Stand Mixer design mark for use in connection with "electric beating and mixing machines and attachments for such machines, in International Class 7."  This registration

issued September 1, 1992 and remains in full force and effect (Ex. A) (hereinafter referred to as the "3D Trademark").



34.    Pursuant to 15 U.S.C. §§ 1065 and 1115(b), this registration became "incontestable" after five years of continuous use, a status the USPTO acknowledged in 1998. The incontestable status of the '158 Registration constitutes *conclusive* evidence of: (a) the validity of the 3D Trademark; (b) Whirlpool's ownership of the 3D Trademark; and (c) Whirlpool's exclusive right to use the 3D Trademark in commerce.  15 U.S.C. §§ 1057(b) and 1115(b).

35.    Whirlpool additionally owns U.S. Trademark Registration No. 5,510,871 ("the '871 Registration) for the two-dimensional silhouette of its KITCHENAID Stand Mixer design for use in connection with "[m]achines for use in the processing or preparation of food and beverage," in International Class 7.  This registration issued July 10, 2018, and remains in full force and effect (Ex. B) (hereinafter referred to as the "2D Trademark").  The 2D and 3D trademark registrations are collectively referred to as "the Trademarks."

36.     Whirlpool also owns unregistered trade dress rights in its widely known and recognized shape for its KITCHENAID Stand Mixer, including its sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base (hereinafter "the Trade Dress").

37.     The Trademarks and Trade Dress for the KITCHENAID Stand Mixer design are inherently distinctive, serving to identify and indicate the source of Whirlpool's stand mixers to the consuming public, and to distinguish its products from those of others.

38.     The Trademarks and Trade Dress are non-functional and serve to identify to consumers that the origin of the product is Whirlpool.

39.     Additionally and alternatively, as a result of Whirlpool's extensive usage and promotion over decades, the Trademarks and Trade Dress have become distinctive to designate Whirlpool's stand mixers, to distinguish Whirlpool's products from the products of others, and to distinguish the source or origin of Whirlpool's products.

40.     As a result, the Trademarks and Trade Dress have become well-known and widely recognized by consumers in the State of Texas and throughout the United States to indicate the source of Whirlpool's stand mixers.

41.     The Trademarks and Trade Dress are distinctive and famous under 15 U.S.C. § 1125(c) and Texas Business and Commerce Code § 16.103.

42.     Consumers know and respect the Trademarks and Trade Dress as a symbol of quality, premium stand mixers.

43.     As a result of Whirlpool's extensive, continuous use and promotion of the Trademarks and Trade Dress in interstate commerce, Whirlpool has developed valuable goodwill and strong common law rights.

44.     As a result of Whirlpool's efforts, consumers have come to identify and recognize the Trademarks and Trade Dress as an indicator of the source of Whirlpool's stand mixer products.

**Defendant Sanlida's Activities**

45.     Defendant Sanlida is in the business of manufacturing and distributing kitchen and other appliances, including stand mixers.

46.     The illustration below shows an exemplary image of one of Sanlida's stand mixer designs (the "Sanlida Infringing Mixer").  As noted above, Defendant Sanlida sells this mixer design under the CookLee name as well as Sanlida.



47.     Defendant Sanlida's Infringing Mixer is sold in the same or similar channels of trade as the KITCHENAID Stand Mixer design. Sanlida's Infringing Mixer is advertised and sold throughout the United States on the Internet and distributed throughout the United States, including throughout Texas.

48.     The Sanlida Infringing Mixer do not have the same premium quality as the KITCHENAID Stand Mixer designs.

49.     Defendant Sanlida could have selected from or developed a virtually infinite number of alternative stand mixer designs instead of the Sanlida Infringing Mixer, which would not be confusingly similar to Whirlpool's Trademarks or Trade Dress.

50.     Defendant intentionally chose a stand mixer design that is confusingly similar to Whirlpool's Trademarks and Trade Dress in an effort to trade on the goodwill of Whirlpool's hugely successful KITCHENAID Stand Mixer design.

51.     Defendant Sanlida's use of the confusingly similar stand mixer design began well after Whirlpool's Trademarks and Trade Dress had acquired great strength and consumer recognition in the marketplace.

52.     Upon information and belief, Defendant Sanlida was aware of Whirlpool's Trademarks and Trade Dress (including the '158 Registration) before it recently began use of the confusingly similar stand mixer design complained of herein.

53.     Defendant Sanlida's commercial use of the Trademarks and Trade Dress is in interstate commerce and is without the permission or authority of Whirlpool.

54.     Defendant Sanlida's Infringing Mixer is a reproduction, counterfeit, copy, or colorable imitation of Whirlpool's Trademarks and Trade Dress and is sold within and distributed throughout the State of Texas.

55.    Defendant Sanlida's unauthorized commercial use of the Infringing Mixer is likely to cause confusion, or mistake, or deceive consumers and potential consumers as to the affiliation, connection, or association of Defendant Sanlida with Whirlpool, or as to origin, sponsorship or approval of Defendant Sanlida's goods, or commercial activities of Whirlpool.

56.    Defendant Sanlida's unauthorized use of its confusingly similar Sanlida Infringing Mixer falsely indicates to the purchasing public that Defendant Sanlida, its business, and its goods or services originate with Whirlpool, or are affiliated, connected, or associated with Whirlpool, or are sponsored, endorsed, or approved by Whirlpool, or are in some manner related to Whirlpool or its goods and services.

57.    Defendant Sanlida's unauthorized use of its confusingly similar Infringing Mixer falsely designates the origin of Defendant's goods, and falsely or misleadingly describes and represents facts with respect to Defendant and its goods.

58.    Defendant Sanlida's unauthorized use of its confusingly similar Infringing Mixer enables Defendant Sanlida to trade on and receive the benefit and goodwill built up at great labor and expense by Whirlpool, and to gain acceptance for Defendant Sanlida's goods based on the reputation and goodwill of Whirlpool, its goods, and its Trademarks and Trade Dress.

59.    Defendant Sanlida's unauthorized use of its confusingly similar Infringing Mixer, a reproduction, counterfeit, copy, or colorable imitation of the KITCHENAID Stand Mixer design and Trade Dress, enables Defendant Sanlida to palm off its goods on the unsuspecting public as those of Whirlpool.

60.    Defendant Sanlida's unauthorized use of its confusingly similar stand mixer design removes from Whirlpool the ability to control the nature and quality of goods and

services associated by consumers with its marks and places the valuable reputation and goodwill of Whirlpool in the hands of Defendant, over whom Whirlpool has no control.

61.     As a result of Defendant Sanlida's unauthorized use of its confusingly similar Sanlida Infringing Mixer, Defendant Sanlida is being unjustly enriched at the expense of Whirlpool and the public.

62.     Defendant Sanlida has damaged Whirlpool's goodwill and reputation and is continuing to damage Whirlpool's goodwill and reputation by its illegal acts. Unless Defendant is restrained by this Court, Defendant will continue to cause irreparable injury to Whirlpool and the public for which there is no adequate remedy at law.

63.     Defendant Sanlida's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of Whirlpool's rights.

64.     In view of the egregious nature of Defendant Sanlida's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

**<u>Defendant Avoga's Activities</u>**

65.     Defendant Avoga is in the business of manufacturing and distributing kitchen and other appliances, including stand mixers.  Upon information and belief, Defendant Avoga is related to Defendant Sanlida through common ownership in China.

66.     The illustration below shows an exemplary image of one of Avoga's stand mixer designs, which it markets under the name Phisinic (the "Infringing Phisinic Mixer".)



67.    Upon information and belief, the products bearing the Infringing Phisinic Mixer and the Sanlida Infringing Mixer are manufactured at the same facility and/or according to the same or similar specifications.

68.    Defendant Avoga's Infringing Phisinic Mixer is sold in the same or similar channels of trade as KITCHENAID Stand Mixer design. Avoga's Infringing Phisinic Mixer is advertised and sold throughout the United States on the Internet and distributed throughout the United States, including throughout Texas.

69.    The Infringing Phisinic Mixer does not have the same premium quality as the KITCHENAID Stand Mixer designs.

70.    Defendant Avoga could have selected from or developed a virtually infinite number of alternative stand mixer designs, instead of the Avoga Infringing Phisinic Mixer, which would not be confusingly similar to Whirlpool's Trademarks or Trade Dress.

71.     Defendant intentionally chose a stand mixer design that is confusingly similar to Whirlpool's Trademarks and Trade Dress in an effort to trade on the goodwill of Whirlpool's hugely successful KITCHENAID Stand Mixer design.

72.     Defendant Avoga's use of the confusingly similar stand mixer design began well after Whirlpool's Trademarks and Trade Dress had acquired great strength and consumer recognition in the marketplace.

73.     Upon information and belief, Defendant Avoga was aware of Whirlpool's Trademarks and Trade Dress (including the '158 Registration) before it began use of the confusingly similar stand mixer design complained of herein.

74.     Defendant Avoga's commercial use of the Trademarks and Trade Dress is in interstate commerce and is without the permission or authority of Whirlpool.

75.     Defendant Avoga's Infringing Phisinic Mixer is a reproduction, counterfeit, copy, or colorable imitation of Whirlpool's Trademarks and Trade Dress and is sold within and distributed throughout the state of Texas.

76.     Defendant Avoga's unauthorized commercial use of the Infringing Phisinic Mixer is likely to cause confusion, or mistake, or deceive consumers and potential consumers as to the affiliation, connection, or association of Defendant Avoga with Whirlpool, or as to origin, sponsorship or approval of Defendant Avoga's goods, or commercial activities of Whirlpool.

77.     Defendant Avoga's unauthorized use of its confusingly similar Infringing Phisinic Mixer falsely indicates to the purchasing public that Defendant Avoga, its business, and its goods or services originate with Whirlpool, or are affiliated, connected, or associated with Whirlpool, or are sponsored, endorsed, or approved by Whirlpool, or are in some manner related to Whirlpool or its goods and services.

78.     Defendant Avoga's unauthorized use of its confusingly similar Infringing Phisinic Mixer falsely designates the origin of Defendant's goods, and falsely or misleadingly describes and represents facts with respect to Defendant and its goods.

79.     Defendant Avoga's unauthorized use of its confusingly similar Infringing Phisinic Mixer enables Defendant Avoga to trade on and receive the benefit and goodwill built up at great labor and expense by Whirlpool, and to gain acceptance for Defendant Avoga's goods based on the reputation and goodwill of Whirlpool, its goods, and its registered KITCHENAID Stand Mixer design and Trade Dress.

80.     Defendant Avoga's unauthorized use of its confusingly similar Infringing Phisinic Mixer, a reproduction, counterfeit, copy, or colorable imitation of the KITCHENAID Stand Mixer design and Trade Dress. enables Defendant Avoga to palm off its goods on the unsuspecting public as those of Whirlpool.

81.     Defendant Avoga's unauthorized use of its confusingly similar design removes from Whirlpool the ability to control the nature and quality of goods and services associated by consumers with its marks and places the valuable reputation and goodwill of Whirlpool in the hands of Defendant, over whom Whirlpool has no control.

82.     As a result of Defendant Avoga's unauthorized use of its confusingly similar Infringing Phisinic Mixer, Defendant Avoga is being unjustly enriched at the expense of Whirlpool and the public.

83.     Defendant Avoga has damaged Whirlpool's goodwill and reputation and is continuing to damage Whirlpool's goodwill and reputation by its illegal acts. Unless Defendant is restrained by this Court, Defendant will continue to cause irreparable injury to Whirlpool and the public for which there is no adequate remedy at law.

84.     Defendant Avoga's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of Whirlpool's rights.

85.     In view of the egregious nature of Defendant Avoga's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

86.     The Sanlida Infringing Mixer products and Avoga's Infringing Phisinic Mixer products are collectively referred to herein as the "Accused Products."

### COUNT I: Federal Trademark Infringement

87.     Whirlpool repeats the allegations above as if fully set forth herein.

88.     The acts of Defendants complained of herein constitute trademark infringement, use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Whirlpool's federally registered trademarks (U.S. Registration Nos. 1,711,158 and 5,510,871) on or in connection with the sale, offering for sale, distribution, or advertising of goods or services in violation of 15 U.S.C. § 1114(1).

89.     Whirlpool has been damaged by Defendants' acts in violation of 15 U.S.C. § 1114(1). Whirlpool is entitled to injunctive relief, and Whirlpool is entitled to recover at least Defendants' profits, Whirlpool's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1116, and 1117.

90.     In view of the nature of Defendants' acts in violation of 15 U.S.C. § 1114(1) complained of herein, and/or Defendants' willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: Trade Dress Infringement

91.     Whirlpool repeats the allegations above as if fully set forth herein.

92.     The acts of Defendants complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendants' use of Whirlpool's Trade Dress and/or reproductions, counterfeits, copies, or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Whirlpool and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Whirlpool.

93.     Whirlpool's Trade Dress is entitled to protection under the Lanham Act. Whirlpool's Trade Dress includes unique, inherently distinctive and non-functional designs. Whirlpool has extensively and continuously promoted and used its Trade Dress in commerce in the United States. Through that extensive and continuous use, Whirlpool's Trade Dress has become a well-known indicator of the origin and quality of Whirlpool's stand mixer products. Whirlpool's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Whirlpool's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Whirlpool's Trade Dress in connection with the infringing products.

94.     Whirlpool has been damaged by Defendants' unlawful use of Whirlpool's Trade Dress and, unless enjoined, Defendants' unlawful use of Whirlpool's Trade Dress will continue to cause substantial and irreparable injury to Whirlpool for which Whirlpool has no adequate remedy at law. The injury to Whirlpool includes at least substantial and irreparable injury to the

goodwill and reputation for quality associated with Whirlpool, Whirlpool's Trade Dress, and Whirlpool's stand mixer products.

95.    Defendants' use of Whirlpool's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the infringing product design to Whirlpool's Trade Dress, as demonstrated above, *see for example* paragraphs 6-9.

96.    Whirlpool is entitled to injunctive relief, and Whirlpool is entitled to recover at least Defendants' profits, Whirlpool's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

97.    In view of the nature of Defendants' acts in violation of 15 U.S.C. § 1125(a) complained of herein, and/or Defendants' willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT III: Federal Unfair Competition

98.    Whirlpool repeats the allegations above as if fully set forth herein.

99.    Defendants have used and continue to use Whirlpool's Trade Dress in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof.

100.    The acts of Defendants complained of herein constitute trademark and trade dress infringement, false designations of origin, false or misleading descriptions or representations of fact on or in connection with goods or services, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

101.    Whirlpool has been damaged by Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein.

102.     The nature of Defendants' acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein and/or Defendants' willfulness and bad faith, make

this an exceptional case under 15 U.S.C. § 1117.

## COUNT IV: Federal Trademark Dilution

103.    Whirlpool repeats the allegations above as if fully set forth herein.

104.    Defendants, directly or through intermediaries, began selling, offering for sale, distributing, or advertising the Accused Products after one or more of the Trademarks became famous and distinctive.

105.    Defendants have used and continue to use Whirlpool's Trade Dress in commerce, or counterfeits, reproductions, copies, or colorable imitations thereof in connection with the advertising, promotion, and sale of Defendants' products.

106.    Defendants unauthorized use in commerce of each Trademark in connection with the Accused Products removes from Whirlpool the ability to control the nature and quality of products provided under each of the Whirlpool Trademarks and places the valuable goodwill and reputation of Whirlpool, Whirlpool's stand mixers, and each of the Whirlpool Trademarks in the hands of Defendants, over whom Whirlpool has no control.

107.    Defendants' unauthorized use in commerce of each Trademark in connection with the Accused Products is likely to cause dilution by blurring or dilution by tarnishment of each of the famous and distinctive Whirlpool Trademarks.

108.    Defendants' acts complained of herein constitute dilution of each of Whirlpool's famous and distinctive Whirlpool Trademarks in violation of 15 U.S.C. § 1125(c).

109.    Defendants' dilution of each of Whirlpool's famous and distinctive Whirlpool Trademarks in violation of 15 U.S.C. § 1125(c) as complained of herein has been, and continues to be, willful, rendering this case exceptional under 15 U.S.C. § 1117(a).

110.    Defendants' acts complained of herein have damaged Whirlpool in an amount to be proven at trial, but no less under 15 U.S.C. § 1117 than up to three times either Defendants'

profits or Whirlpool's actual damages from Defendants' wrongful acts, whichever amount is greater, together with Whirlpool's reasonable attorneys' fees and costs.

111.    Unless Defendants' acts complained of herein are restrained by this Court, those acts will continue and will continue to cause irreparable injury to Whirlpool and to the public for which there is no adequate remedy at law.

### COUNT V: Trademark and Trade Dress Infringement Under the Common Law of Texas

112.    Whirlpool repeats the allegations above as if fully set forth herein.

113.    The acts of Defendants complained of herein constitute trademark and trade dress infringement in violation of the common law of Texas

114.    Whirlpool has been damaged by Defendants' acts of common law trademark and trade dress infringement.

### COUNT VI: Injury to Business Reputation or Trademark or Trade Dress Under Texas Business and Commerce Code

115.    Whirlpool repeats the allegations above as if fully set forth herein.

116.    The acts of Defendants complained of herein are likely to cause injury to Whirlpool's business reputation and to dilute the distinctive quality of Whirlpool's Trademarks and Trade Dress, in violation of Texas Statute, Tex. Bus. & Com. Code § 16.29, regardless of whether there is competition between the parties or confusion as to the source of the goods or services.

117.    The acts of Defendants complained of herein are likely to cause injury to Whirlpool's business reputation and to dilute the distinctive quality of Whirlpool's Trademarks and Trade Dress, in violation of Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.103.

118.    Defendants' acts have caused injury to Whirlpool's business reputation and

dilution of the Whirlpool Trademarks and Trade Dress in violation of the Texas Injury to Business Reputation and the Texas Anti-Dilution statute.

### COUNT VII: Texas Common Law Unfair Competition

119.    Whirlpool repeats the allegations above as if fully set forth herein.

120.    The acts of Defendants complained of herein constitute trademark and trade dress infringement, false designations of origin, false advertising, dilution and other unfair competition in violation of Texas common law.

121.    Whirlpool has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial.

122.    Upon information and belief, Defendants' conduct is willful, deliberate, intentional and in bad faith.

123.    By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Whirlpool.  Whirlpool has no adequate remedy at law to address these injuries.

### COUNT VIII: Unjust Enrichment

124.    Whirlpool repeats the allegations above as if fully set forth herein.

125.    Defendants have been and continue to be unjustly enriched at the expense of Whirlpool by Defendants' acts complained of herein.

126.    Specifically, Defendants have taken unfair advantage of Whirlpool by trading on and profiting from the goodwill and reputation of each of the Whirlpool Trademarks and Trade Dress, all of which were developed and are owned by Whirlpool and its predecessors, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for its own business and products.

127.    Defendants' acts complained of herein constitute unjust enrichment at Whirlpool's expense in violation of Texas state common law.

128.    Whirlpool has been damaged by Defendants' acts of unjust enrichment.

## JURY DEMAND

Whirlpool demands a jury trial in accordance with Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Whirlpool requests entry of judgment against Defendant as follows:

1.    That Defendants violated 15 U.S.C. §§ 1114, 1125(a), 1125(c), and the Texas Common Law;

2.    A determination that the case is "exceptional," under 15 U.S.C. § 1117(a).

3.    Preliminarily and permanently enjoining and restraining Defendants, their affiliates, subsidiaries, related companies, and all those acting in concert or participation with them from:

   (a)    using (i) the confusingly similar Sanlida Infringing Mixer, (ii) Avoga Infringing Phisinic Mixer, (iii) any other stand mixer design that is similar to (i) or (ii), and (iv) any other stand mixer design that is likely to cause confusion with Whirlpool's Trademarks or Trade Dress;

   (b)    otherwise competing unfairly with Whirlpool in any manner, including, without limitation, unlawfully adopting or using any other stand mixers shaped or designs that are likely to cause confusion with Whirlpool's Trademarks or Trade Dress;

   (c)    committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe or likely to dilute Whirlpool's registered Trademarks or Trade Dress, or to confuse, mislead, or deceive consumers as to the affiliation,

connection, or association of Defendants with Whirlpool or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by Whirlpool; and

(d)    conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a), (b), and (c) above;

4.    That Defendants, their affiliates, subsidiaries, related companies, and all those acting in concert or participation with them be ordered to:

(a)    remove from all websites any depiction of references to the Sanlida Infringing Mixer and/or the Avoga Infringing Phisinic Mixer;

(b)    recall and destroy (or deliver to the Court for destruction) all products and packaging consisting of, involving, or related to the infringing stand mixer designs and provide proof to the Court of the same; and

(c)    destroy (or deliver to the Court for destruction) any and all advertising or promotional or other materials pertaining to the infringing stand mixer designs and all product utilizing the infringing stand mixer designs, regardless of the medium on which such advertising, promotional, or other materials are contained and provide proof to the Court of the same;

5.    That Defendants be required to file with this Court and serve upon Whirlpool within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants complied with the injunction;

6.    That Defendants be required to account for, and turn over to Whirlpool, all profits realized as a result of its infringement and other unlawful acts, such award of profits to be enhanced as the Court finds just under the circumstances of this case;

7.     That Whirlpool be awarded its actual and/or statutory damages and Defendants' profits and that said damages/profits be trebled pursuant to 15 U.S.C. § 1117 or other applicable law based on Defendants' counterfeiting.

8.     That Whirlpool be awarded its attorney's fees pursuant to 15 U.S.C. § 1117(a) or other applicable law;

9.     That Whirlpool be awarded its costs of this action, and prejudgment and post-judgment interest;

10.     That Whirlpool be awarded exemplary damages; and

11.     That Whirlpool be granted such other and further relief, at law or in equity, as the Court may deem just and proper.

**DATED** this 31st day of January, 2022.

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa Richards Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Marc Lorelli (Michigan Bar No. P63156)
LEAD ATTORNEY
Chanille Carswell (Michigan Bar No. P53754)
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email: mlorelli@brookskushman.com
       ccarswell@brookskushman.com

*Counsel for Plaintiffs*
