**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **WHIRLPOOL CORP. and**<br>**WHIRLPOOL PROPERTIES, INC.,** | **Case No. 2:22-cv-00027-JRG-RSP** |
| **Plaintiffs,** | |
| **v.** | |
| **SHENZHEN SANLIDA ELECTRICAL**<br>**TECHNOLOGY CO. LTD., and**<br>**SHENZHEN AVOGA TECHNOLOGY CO.**<br>**LTD.,** | **JURY DEMAND** |
| **Defendants.** | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
**AND BRIEF IN SUPPORT**

Pursuant to Rule 65 of the *Federal Rules of Civil Procedure*, Plaintiffs Whirlpool Corp. and Whirlpool Properties, Inc. ("Plaintiffs" or "Whirlpool") filed a motion requesting the Court enter a preliminary injunction preventing Defendants Shenzhen Sanlida Electrical Technology Co. Ltd., and Shenzen Avoga Technology Co. Ltd. (collectively "Defendants") from manufacturing, selling, or offering for sale stand mixers that infringe upon Plaintiffs' rights in the KitchenAid Mixer Design protected by U.S. Trademark Registration No. 1,711,158 (hereinafter "Plaintiffs' Trademark.")  The KitchenAid Mixer Design is presented below.



The term "Infringing Mixers" is used to refer to mixers from both Defendants shown below the mimic the KitchenAid Mixer Design.





 Registration No. 1,711,158          PHISINIC          COOKLEE

The basis and reasons supporting Plaintiffs' motion for injunctive relief, are set forth more fully in Plaintiffs' Brief In Support Of Its Motion For a Preliminary Injunction, in the Complaint on file herein, and by the exhibits thereto. Specifically, by this motion, Plaintiffs Whirlpool respectfully requests that this Court grant its Motion for a Preliminary Injunction and enter the injunction prohibiting Defendants from selling, distributing, advertising, or promoting the Infringing Mixers during the pendency of this lawsuit.

The entry of a preliminary injunction against Defendants is necessary to prevent Whirlpool from continuing to be irreparably harmed by Defendants' unauthorized use of Plaintiffs' Trademark. Although notice of infringement was provided, Defendants have used and continue to use, as of the date of this Motion, Plaintiffs' Trademark in connection with Defendants' mixers and in its sales, advertising, and promotion, including on the Internet through retail channels such as Amazon and Wayfair.

Respectfully submitted,

Dated:  January 31, 2022

_____

Melissa Richards Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Marc Lorelli (Michigan Bar No. P63156)
LEAD ATTORNEY
Chanille Carswell (Michigan Bar No. P53754)
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email: mlorelli@brookskushman.com
       ccarswell@brookskushman.com

*Counsel for Plaintiffs*

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **WHIRLPOOL CORP. and**<br>**WHIRLPOOL PROPERTIES, INC.,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**SHENZHEN SANLIDA ELECTRICAL**<br>**TECHNOLOGY CO. LTD., and**<br><br>**SHENZHEN AVOGA TECHNOLOGY CO.**<br>**LTD.,**<br><br>        **Defendants.** | **Case No. 2:22-cv-00027-JRG-RSP**<br><br><br><br>**JURY DEMAND** |

# PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
# FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 1

    A.      The KitchenAid Iconic Stand Mixer Design ................................................. 1

    B.      A Leader in the Marketplace ......................................................................... 3

    C.      Defendants and Their Wrongful Copying ..................................................... 6

III.    ARGUMENT .......................................................................................................... 8

    A.      Whirlpool is Highly Likely to Succeed on the Merits of its Trademark
           Infringement Claims ...................................................................................... 8

          1.      Whirlpool has Protectable Rights in its Mixer Shape ...................... 9

                  a.      KitchenAid Mixer Design Has Strong Secondary Meaning .......... 9

                  b.      KitchenAid Mixer Design is Non-Functional ............................. 10

          2.      There is a Substantial Likelihood of Confusion Between the Iconic
              KitchenAid Mixer Design and Defendant's Infringing Products ............. 12

                  a.      Digit 1:  Whirlpool's Registered Trademark is Strong ................ 12

                  b.      Digit 2: Defendants' Infringing Designs are Substantially
                      Similar to Whirlpool's Trademark ............................................... 13

                  c.      Digit 3: Parties Sell the Same Products ....................................... 15

                  d.      Digit 4: The Purchasers and Retailers are Identical .................... 16

                  e.      Digit 5: The Marketing Efforts are Similar ................................. 16

                  f.      Digit 6: Defendants' Intent to Confuse Strongly Favors
                      Confusion ...................................................................................... 17

                  g.      Digit 7: Actual Confusion is Inevitable ....................................... 18

                  h.      Digit 8: The Degree of Care Also Favors Confusion ................... 18

                  i.      Summary – There is Clearly a Likelihood of Confusion ............. 20

    B.      If Not Enjoined, Whirlpool Will be Irreparably Harmed by Defendants'
           Conduct ........................................................................................................ 20

    C.      The Balance of Hardship Weighs Heavily in Favor of Whirlpool ....................... 21

D.      A Preliminary Injunction Will Not Disserve the Public Interest ..........................22

IV.    CONCLUSION ...............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Abraham v. Alpha Chi Omega*,
    781 F. Supp. 2d 396 (N.D. Tex. 2011) ................................................................... 15

*Academy Ltd. v. CWGS Grp., LLC*,
    No. H-18-4366, 2019 U.S. Dist. LEXIS 189507, at *8 (S.D. Tex. Oct. 31, 2019) ............... 11

*ADT, LLC v. Capital Connect, Inc.*,
    145 F. Supp. 3d 671 (N.D. Tex. 2015) ................................................................. 19

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
    518 F.3d 321 (5th Cir. 2008) ................................................................. 12, 17, 18

*Amid, Inc. v. Medic Alert Found. United States, Inc.*,
    241 F. Supp. 3d 788 (S.D. Tex. 2017) ................................................................. 10

*Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*,
    214 F. Supp. 3d 573 (S.D. Tex. 2016) ..................................................... 12, 13, 16, 19

*Bd. Of Supervisors for La. State Univ. Agric. & Mech. College*,
    550 F.3d at 482 (5th Cir. 2008) ......................................................................... 14

*Blue Bell Creameries, L.P. v. Denali Co., LLC*,
    No. H-08-0981, 2008 U.S. Dist. LEXIS 58083, at *21 (S.D. Tex. July 31, 2008) ............. 22

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
    510 F.2d 1004 (5th Cir. 1975) ............................................................................ 8

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) ............................................................................. 8

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,
    659 F.2d 695 (5th Cir. 1981) ............................................................................ 17

*Clearline Tech. Ltd. v. Cooper B-Line Inc.*,
    948 F. Supp. 2d 691 (S.D. Tex. 2013) ................................................................. 20

*Daddy's Junky Music v. Big Daddy's Family Music*,
    109 F.3d 275 (6th Cir. 1997) ............................................................................ 19

*Daniels Health Scis. v. Vascular Health Scis., LLC*,
    710 F.3d 579 (5th Cir. 2013) ............................................................................. 8

*E. & J. Gallo Winery v. Spider Webs, Ltd.*,
    286 F.3d 270 (5th Cir. 2002)...................................................................18

*Elvis Presley Enters., Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1998).......................................................14, 15, 18,20

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*,
    289 F.3d 351 (5th Cir. 2002)..............................................................10, 11

*Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*,
    628 F.2d 500 (5th Cir. 1980)............................................................13, 14, 15

*Federal Sav. & Loan Ins. Corp. v. Dixon*,
    835 F.2d 554 (5th Cir. 1987).....................................................................8

*Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*,
    434 F. Supp. 3d 473 (E.D. Tex. 2020) .......................................................21

*Global Healing Ctr. LP v. Nutritional Brands Inc.*,
    No. 4:14-CV-269, 2014 U.S. Dist. LEXIS 28686, at *33 (S.D. Tex. Mar. 6, 2014).........8, 12

*Heartsprings, Inc. v. Heartspring, Inc.*,
    143 F.3d 550 (10th Cir.)..........................................................................16

*Homax Prod., Inc. v. HoMax, Inc.*,
    2009 U.S. Dist. LEXIS 126699, at *34 (S.D. Tex. Aug. 5, 2009) .......................................18

*Hutchinson v. Essence Commc'ns, Inc.*,
    769 F. Supp. 541 (S.D.N.Y. 1991) ...........................................................18

*Laboratories Pisa S.A. de C.V. v. PepsiCo., Inc.*,
    No. 7:21-cv-00062, 2021 U.S. Dist. LEXIS 36960, at *2–3 (S.D. Tex. Feb. 27, 2021) ......8

*Luxottica Group S.P.A. v. Atl. Sunglasses LLC*,
    No. 4:15-CV-1795, 2017 U.S. Dist. LEXIS 217991, at *7 (S.D. Tex. Mar. 24, 2017)........19

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008)......................................................................8

*Quantum Fitness Corp. v. Quantum Lifestyle Centers*,
    83 F. Supp. 2d 810 (S.D. Tex. 1999) .........................................12, 13, 16, 20, 22

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
    655 F. Supp. 2d 679 (S.D. Tex. 2009) ...................................................14, 18

*Roto-Rooter Corp. v. O'Neal*,
    513 F.2d 44 (5th Cir. 1975).......................................................................18

*S&R Corp. v. Jiffy Lube Intern., Inc.*,
    968 F.2d 371 (3d Cir. 1992) ................................................................................22

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
    381 F.3d 477 (5th Cir. 2004) ..........................................................................16, 18

*Soweco, Inc. v. Shell Oil Co.*,
    617 F.2d 1178 (5th Cir. 1980) ...............................................................................9

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
    932 F.2d 1113 (5th Cir. 1991) .........................................................................11, 12

*Terex S.D. v. Sinoboom N. Am.*,
    No. H-21-287, 2021 U.S. Dist. LEXIS 191168, at *35 (S.D. Tex. Aug. 16, 2021).............18

*TGI Friday's, Inc v. Great Northwest Rests., Inc.*,
    652 F. Supp. 2d 763 (N.D. Tex. 2009) ................................................................. 21

*T-Mobile US, Inc. v. Aio Wireless LLC*,
    991 F. Supp. 2d 888 (S.D. Tex. 2014) ...........................................................13, 16

*Traffix Devices v. Mktg. Displays*,
    532 U.S. 23 (2001) .........................................................................................10, 11

*Union Nat'l Bank of Laredo, Tex. v. Union Nat'l Bank of Tex.*,
    909 F.2d 839 (5th Cir. 1990) ................................................................................9

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) .............................................................................................8

*Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*,
    891 F.3d 178 (5th Cir. 2018) ...............................................................................17

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009) ...............................................................................19

*YETI Coolers, LLC v. JDS Indus., Inc.*,
    300 F. Supp. 3d 899 (W.D. Tex. 2018) ...................................................10, 11, 12

## Statutes

15 U.S.C. § 1051 ...............................................................................................................8
15 U.S.C. § 1065 ...............................................................................................................9
15 U.S.C. § 1114 ...............................................................................................................8
15 U.S.C. § 1115 ..........................................................................................................9, 10
15 U.S.C. § 1116 ..........................................................................................................8, 21
15 U.S.C. § 1125(a)(1)(A) .................................................................................................9
15 U.S.C. §§ 1057(b) ........................................................................................................9

**IMAGE OVERVIEW**

Since 1937, KitchenAid branded stand mixers have been sold and promoted utilizing the following shape.



In 1992, KitchenAid was awarded a Trademark Registration No. 1,711,158 for its iconic stand mixer shape.

Recently, the Defendants (from the same area of China and presumably related) introduced the below stand mixers each bearing the same model No. 1522 and shape that mimics the iconic KitchenAid trademarked design through online retailers in the United States.




# I.   INTRODUCTION

Whirlpool Corporation and Whirlpool Properties, Inc. (hereinafter collectively referred to as "Whirlpool") move this Court for a preliminary injunction enjoining Defendants Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") and Shenzhen Avoga Technology Co. Ltd. ("Avoga") (collectively "Defendants") from selling, distributing, advertising or promoting their accused stand mixers that infringe Whirlpool's registered trademark during the pendency of this lawsuit.

Whirlpool is a leading global manufacturer of home appliances and accessories, including the iconic KitchenAid stand mixer.  For over 80 years, Whirlpool has invested heavily in marketing and promotion to develop tremendous brand recognition and goodwill in the shape of its most popular and globally well-known stand mixer shown above.  Decades ago, Whirlpool was even awarded an incontestable trademark registration that protects the shape.  Unfortunately, Defendants, who operate primarily through online channels in the United States, have recently introduced stand mixers that mimic Whirlpool's iconic 80-year-old shape.  To generate sales, Defendants intentionally seek to trade on the goodwill Whirlpool built in the KitchenAid stand mixer over its 80-year history.  Trademark law is designed to prevent this precise copycat situation that fosters confusion, mistake and deception with the leader in the marketplace.

## II.   FACTUAL BACKGROUND

### A.   The KitchenAid Iconic Stand Mixer Design

In 1915, Hobart Manufacturing Company ("Hobart") successfully launched the first commercial stand mixer.  In 1919, the first home stand mixer, the Model H-5, was born.  Designed by Hobart engineer Herbert Johnson, the Model H-5 utilized a unique "planetary" mixing action that rotated the beater in one direction while moving it around the bowl in the opposite direction.  It soon became popular, touted for superior quality and value as a multi-purpose food preparation tool.  Many

top magazines, such as Good Housekeeping, The New Yorker, and Harper's Bazaar, praised its ability to mix, stir, beat, cut, cream, slice, chop, grind, strain, and freeze.

In 1937, after the KitchenAid brand was born, Herbert Johnson recruited renowned industrial designer and commercial artist Egmont Arens to revamp the shape of the stand mixer.  Arens created the "Model K," with a modern aesthetic that had broad consumer appeal and would eventually propel the KitchenAid stand mixer to iconic, cult status. Arens' enduring design, reflected in the current KitchenAid tilt-head stand mixer shown below, has remained virtually unchanged for over 80 years:



This artful and rounded shape of the KitchenAid stand mixer widely known and recognized today, i.e. the sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base, has been manufactured and sold by Whirlpool[1] in the United States for more than 80 years, since 1937 (hereinafter the "KitchenAid Mixer Design").

While the KitchenAid stand mixer's quality, reliability and versatility continue to be driving factors in its popularity among consumers, its signature shape is how those attributes are recognized. Consumers in the U.S. and around the world invariably agree that the KitchenAid Mixer Design is instantly recognizable as emanating from Whirlpool:

---

[1] In the mid-1980s, the Whirlpool Corporation acquired the KitchenAid brand from Hobart.

> [W]ith a design that's changed so little, you can recognize a KitchenAid stand mixer anywhere, an essential trait of an icon.
>
> *How the KitchenAid Stand Mixer Achieved Icon Status, www.eater.com, Feb. 24, 2020* (Ex. 1, Searles Decl., Ex. A at WHPL000444.)
>
> When thinking of a stand mixer, the image that comes to mind is probably of the KitchenAid Artisan Stand Mixer. Why? Well, it's the most iconic stand mixer on the market, and you'll find one in the kitchen of countless TV chefs, and even on the counters of the Great British Baking Show contestants.
>
> *KitchenAid Artisan Stand Mixer Review: a classic for a reason, www.homeandgardens.com, Aug. 19, 2021* (Ex. 3, Lorelli Decl., Ex. O at WHPL00403.)

Additionally, after Whirlpool submitted substantial evidence showing that the KitchenAid Mixer Design is recognized by consumers and the trade as signifying high quality goods originating exclusively from Whirlpool, the U.S. Patent and Trademark Office ("USPTO") allowed Whirlpool to register as trademarks the two-dimensional silhouette ("2D") and three-dimensional ("3D") KitchenAid mixer shape.  (Ex. 3, Exs. A and B thereto.)

**B.     A Leader in the Marketplace**

KitchenAid is indisputably a leading brand among stand mixers – a space that KitchenAid pioneered a century ago.  (Ex. 1, Searles Decl. at ¶ 9.)  Whirlpool has sold millions of mixers and generated billions of dollars in revenue from products that bear the iconic KitchenAid Mixer Design. (*Id.*)  The majority of stand mixers sold in the United States are KitchenAid.  In the last decade, Whirlpool has sold tens of millions of KitchenAid stand mixers in the United States.  (*Id.*)

Whirlpool sells KitchenAid stand mixers direct to consumers through an online retail store at www.kitchenaid.com as well as other online retailers including Amazon and Wayfair.  (*Id.*)  The stand mixers are also sold through distributors and major third-party retailers, including Williams-Sonoma, Bed Bath and Beyond, Home Depot, Walmart, Target, Crate and Barrel, and Best Buy. (*Id.*)

Whirlpool has spent millions of dollars promoting its KitchenAid Mixer Design through various media, including national and local print, television, signage, online and social media.  (*Id.* at

¶¶ 15-16.)   The KitchenAid Mixer Design appears prominently in numerous top-rated shows, including Magnolia Network's Magnolia Table with Joanna Gaines, Netflix's Nailed It, Bravo's Top Chef, and many others.  (*Id.* at ¶ 17.)  This product, with its iconic shape, is also the featured tool in the social media and blog posts of many celebrity chefs and cooking influencers including Barefoot Contessa Ina Garten, Trisha Yearwood of the Food Network, and Dominique Ansel – famed pastry chef and creator of the Cronut. (*Id.* at ¶ 18.)  Whirlpool and the KitchenAid brand have a strong following on social media (*e.g.* Facebook, Twitter, and Instagram) where the KitchenAid Mixer Design features regularly.  (*Id.* at ¶ 16.)  There is even a museum with a factory tour located in Greensville, Ohio, where the iconic mixer has been manufactured for generations.  (Ex. 3, Lorelli Decl. at Ex. P.)

In addition to KitchenAid advertising being ubiquitous, virtually all advertisements, displays and points of purchase feature the KitchenAid Mixer Design. (Ex. 1, Searles Decl. at ¶¶ 10-13.)  In fact, Whirlpool has even advertised the fact that the KitchenAid Mixer Design is a Registered Trademark. (*Id.* at ¶ 12.) Such advertisements, like those reproduced below, communicate to consumers that the KitchenAid brand is synonymous with this shape.  (*Id.*)





As further evidence of the source-identifying power of the KitchenAid Mixer Design, KitchenAid will often advertise with only this iconic 3D design – and <u>not</u> the KitchenAid name.  (*Id.* at ¶¶ 12-13.)   Some examples are reproduced below:

 

The KitchenAid Mixer Design has also received numerous accolades and recognitions, including from the New York Times, Good Housekeeping, and Architectural Digest.  (*Id.* at ¶ 6.)

For decades, the KitchenAid Mixer Design has received unsolicited, third-party media attention that references the shape and design and deems it "iconic."  (*Id.* at ¶¶ 4-5.)  Indeed, in a 2019 article marking the 100-year anniversary of KitchenAid, the Smithsonian Magazine referred to the mixer as an "iconic staple for what a well-furnished kitchen should include."  (*Id.* at Ex. A thereto at WHPL000428.)  The article notes that KitchenAid mixers were prominent in Julia Child's television series and one model she owned is displayed, along with her entire home kitchen, at the National Museum of American History.  (*Id.*)  This sentiment is repeated in numerous articles commenting on the enduring design:

> **[T]he KitchenAid stand mixer is so widely loved that people get its likeness tattooed on their bodies....**They're ubiquitous on cooking shows and in magazines; and in most product reviews of the category, **KitchenAid unquestionably reigns supreme for its classic design and superior performance**.

5

*How the KitchenAid Stand Mixer Achieved Icon Status*, www.eater.com, Feb. 24, 2020 (emphasis added) (Ex. 1, Searles Decl., Ex. A at WHPL000442, 444.)

"The KitchenAid stand mixer has become one of the most enduring icons of the home baker: **steadfast in its design**, beloved across generations, and genuinely excellent in the kitchen."

*The Mysterious Appeal of the KitchenAid Mixer*, www.reviewed.com, March 5, 2021 (emphasis added). (Ex. 1, Searles Decl., Ex. A at WHPL000449.)

Finally, a recent consumer survey confirmed the overwhelming strength of the KitchenAid Mixer Design.  After viewing the mixer *without* the KitchenAid trademark, 89.7% recognized the stand mixer and 69.8% knew the design by name.  (Ex. 4, Poret Report: "[T]he KitchenAid trade dress has an extremely high degree of consumer recognition.")

**C.**     **Defendants and Their Wrongful Copying**

Defendants Sanlida and Avoga (both from Shenzhen, China) appear to be related entities that manufacture and distribute the model 1522 stand mixer that are sold under the names COOKLEE and PHISINIC, respectively, ("the Infringing Design(s)"):



*Sanlida Infringing Mixer Design*                    *Avoga Infringing Mixer Design*

Both Infringing Designs directly compete with stand mixers bearing the KitchenAid Mixer Design as they are sold and advertised in the exact same channels of trade, including online retailers Amazon and Wayfair.  Indeed, if one searches for "KitchenAid Stand Mixer" on Amazon, the

Cooklee product appears on *the first page* of results and the Phisinic mixer appears on subsequent pages.  (Ex. 3, Lorelli Decl. at ¶¶ 4-5, Ex. C thereto; *see also* Ex. E thereto.)

The Infringing Designs were recently introduced in 2021, and Whirlpool registered complaints with Amazon.  (Ex. 3 at ¶¶ 13-17.)  While one sales listing (ASIN)[2] was removed (likely by Amazon), the same mixer is available for purchase through other listings on Amazon.  (*Id*.)  Amazon provided the business contact information for each seller, so on January 12, 2022, Whirlpool contacted each seller to request that the infringing sales cease in the United States.  (Ex. 3 at Exs. J and K thereto.)  Neither Defendant responded.  (*Id*. at ¶¶ 15, 17.)

Whirlpool obtained samples of a model 1522 mixer from each Defendant through Amazon.  Each of these mixers are clearly inferior to the stand mixers sold by Whirlpool having the KitchenAid Mixer Design.  Each infringing mixer suffers from inferior stability, poor craftsmanship and poor mix quality.  (Ex. 2, Snyder Decl. at ¶¶ 6-15.)  Simply, Defendants manufacture substandard, copycat products in China and, based on the goodwill of the KitchenAid Mixer Design Defendants are copying, sell them at lower prices in the United States.

Given the prominence of the KitchenAid Mixer Design in the market and its long-term status as a pioneer and leader in the category, Defendants were undoubtedly aware of the KitchenAid Mixer Design before they began marketing products that mimic KitchenAid's iconic shape.  Defendants' unauthorized use of the Infringing Designs enable them to trade on and receive the benefit and goodwill built up at great labor and expense by Whirlpool, and to gain acceptance for their goods in the marketplace based on the reputation and goodwill of Whirlpool.

---

[2] Amazon Standard Identification Numbers (ASINs) are unique blocks of 10 letters and/or numbers that identify items. You can find the ASIN on the item's product information page at Amazon.com.

## III.    ARGUMENT

Among other claims, in its Complaint filed contemporaneously herewith Whirlpool seeks redress under the Lanham Act, 15 U.S.C. § 1051, *et seq.* for Registered Trademark Infringement under 15 U.S.C. § 1114.  Injunctive relief is appropriate once a violation of the Lanham Act is demonstrated. *See* 15 U.S.C. § 1116; *e.g., Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1013 (5th Cir. 1975), *cert. denied*, 423 U.S. 868 (1975); *Global Healing Ctr. LP v. Nutritional Brands Inc.*, No. 4:14-CV-269, 2014 U.S. Dist. LEXIS 28686, at *33 (S.D. Tex. Mar. 6, 2014).

To prevail on this request for preliminary injunctive relief, Whirlpool will demonstrate that: (1) a substantial likelihood of success in proving trademark infringement exists; (2) a substantial threat of continuing irreparable injury will exist if the injunction is not issued; (3) the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) the grant of an injunction will not disserve the public interest. *Daniels Health Scis. v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Laboratories Pisa S.A. de C.V. v. PepsiCo., Inc.*, No. 7:21-cv-00062, 2021 U.S. Dist. LEXIS 36960, at *2–3 (S.D. Tex. Feb. 27, 2021) (citations omitted).  Notably, Whirlpool "is not required to prove [its] case in full at a preliminary injunction hearing."  *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

### A.    Whirlpool is Highly Likely to Succeed on the Merits of its Trademark Infringement Claims

Lanham Act liability is established by showing that the defendant "uses in commerce any word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake" about the "origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Paulsson Geophysical Servs., Inc. v. Sigmar,* 529 F.3d 303, 309 (5th Cir. 2008) (quoting 15

U.S.C. § 1125(a)(1)(A).  The Court must consider whether Whirlpool has a "protectable right in the mark" and whether there is a "likelihood of confusion between the marks." *Id.*

1.    **Whirlpool has Protectable Rights in its Mixer Shape**

Whirlpool has protectable rights in the KitchenAid Mixer Design based on its U.S. registration and prior use of the design. That is, a registered trademark is presumed valid. 15 U.S.C. §§ 1057(b) and 1115(a). Also, incontestable trademarks, such as asserted U.S. Registration No. 1,711,158 (hereinafter the "'158 Registration"), provide conclusive "evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. . ." 15 U.S.C. § 1115(b).[3]

Additionally, ownership is determined by priority of use. *Union Nat'l Bank of Laredo, Tex. v. Union Nat'l Bank of Tex.*, 909 F.2d 839, 842-43 (5th Cir. 1990) ("The first one to use the mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it[.]").  Notwithstanding Whirlpool's '158 Registration, Whirlpool indisputably has superior rights based on its use of the KitchenAid Mixer Design for over 80 years before Defendants first began using the Infringing Designs.  There is no question that Whirlpool has valid, protectable rights in its KitchenAid Mixer Design.

a.    **KitchenAid Mixer Design Has Strong Secondary Meaning**

Incontestable marks "are ***conclusively presumed*** to be nondescriptive or to have acquired secondary meaning;" they cannot be challenged as lacking secondary meaning. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980) (citation omitted; emphasis added). *See also,* 15 U.S.C. §1115(b). Whirlpool's '158 Registration is incontestable, as the USPTO acknowledged in 1998.  (*See* Ex. 3 at Ex. A thereto at WHPL0000135.)  Not only is secondary meaning presumed,

---

[3] A mark becomes "incontestable" when it "has been in continuous use for five consecutive years after registration and is still in use in commerce." 15 U.S.C. § 1065.

but the evidence presented herein is compelling.  (*See infra* Section II.A. and II.B.)  The KitchenAid Mixer Design has strong secondary meaning.

> **b.**     **KitchenAid Mixer Design is Non-Functional**

The non-functionality requirement "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (citation and quotation marks omitted).

It is indisputable that the KitchenAid Mixer Design is non-functional. Whirlpool's '158 Registration, which establishes the validity of the registered mark, provides *prima facie* evidence that the artful and rounded shape of the KitchenAid Mixer Design that is recognized the world over is non-functional. 15 U.S.C. § 1115(a) (a registration on the Principal Register is "prima facie evidence of the validity of the registered mark").

The KitchenAid Mixer Design is also non-functional as a matter of law.  There are two tests to determine whether a product feature is functional – the traditional and competitive necessity tests. *YETI Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 913 (W.D. Tex. 2018).  "The traditional test of functionality is whether the product feature 'is essential to the use or purpose of the article or if it affects the cost or quality of an article.'"  *Amid, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 819 (S.D. Tex. 2017) (quoting *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 32 (2001)).  "Under this definition, 'if a product feature is the reason the device works, then the feature is functional.'"  *YETI Coolers*, 300 F. Supp. 3d at 913 (quoting *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002)).  Under the competitive necessity test, a feature is functional "if the exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Ritter*, 289 F.3d at 356.  "Even if individual constituent parts of a product's trade dress are functional, 'a particular arbitrary combination of functional features, the combination

of which is not itself functional, properly enjoys protection.'" *YETI Coolers*, 300 F. Supp. 3d at 913

(quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991)).  In light of

*Traffix*, the Fifth Circuit explained that "the primary test" for determining functionality is the

traditional test, i.e. "whether the feature is essential to the use or propose of the product or whether it

affects the cost or quality of the product."  *Ritter*, 289 F.3d at 356.

Regardless of which test is applied, the KitchenAid Mixer Design is non-functional. The

KitchenAid Mixer Design outlined above is not essential to the purpose of the product and does not

impact the quality or cost of the product.  This is evident when you review the myriad other stand

mixers bearing completely different designs – including other designs from the Defendants as shown

below.  (Ex. 3 at ¶ 18, Ex. L thereto.)



Academy Ltd. v. CWGS Grp., LLC*, No. H-18-4366, 2019 U.S. Dist. LEXIS 189507, at *8 (S.D. Tex.

Oct. 31, 2019) (finding defendant's "years-long use of a different, non-infringing color scheme and

trade dress" was convincing evidence the trade dress was non-functional and protectable).

Simply, the KitchenAid Mixer Design is not the reason why the device works and, therefore,

Whirlpool's Registered Trademark is not functional under the traditional definition.  *See Ritter*, 289

F.3d at 355.  Moreover, even if somehow individual features of the iconic shape are deemed

functional, the combination of features is arbitrary and non-functional and still enjoy protection.  *See*

*Taco Cabana*, 932 F.2d at 1119 (even though "functional features cannot be protected ... a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection."); *YETI Coolers*, 300 F. Supp. 3d at 914 (holding that YETI sufficiently alleged that its trade dress is nonfunctional even though certain features of the trade dress may be considered functional). In short, Whirlpool's exclusive use of KitchenAid Mixer Design does not put its competitors at a non-reputation-related disadvantage.

    **2.**     **There is a Substantial Likelihood of Confusion Between the Iconic KitchenAid Mixer Design and Defendant's Infringing Products**

In the Fifth Circuit, Courts look at the following non-exhaustive list of so-called "digits of confusion," to assess the likelihood of confusion: "(1) strength of the mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008). Again, each factor overwhelmingly supports finding a substantial likelihood of confusion.

    **a.**     **Digit 1:  Whirlpool's Registered Trademark is Strong**

Stronger marks deserve greater protection because there is an increased likelihood that consumers will confuse the junior user's mark with that of the senior user." *Global Healing Ctr. LP*, 2014 U.S. Dist. LEXIS 28686, at *14 (citation omitted).  The strength of a trademark in the marketplace is measured by its effectiveness in identifying a source of goods." *Quantum Fitness Corp. v. Quantum Lifestyle Centers*, 83 F. Supp. 2d 810, 818-19 (S.D. Tex. 1999).  While Whirlpool enjoys an incontestable trademark registration, "the more important" consideration for this digit "is a mark's commercial strength." *Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 585 (S.D. Tex. 2016) (citation omitted).

As outlined above in Sections II.A. and II.B., Whirlpool's Registered Trademark is exceptionally strong given that: (1) it has been used for more than 80 years, (2) Whirlpool has invested millions in advertising the KitchenAid Mixer Design, (3) products with the KitchenAid Mixer Design have generated billions in revenues, (4) the KitchenAid Mixer Design has been the subject of scores of unsolicited media coverage for decades, and (5) the KitchenAid Mixer Design has been the driver of Whirlpool's place as a market leader in the category since its inception.  (Ex. 1, Searles Decl. at ¶¶ 3-19.)  There is even further evidence of the strength of the mark.  Leading market research and survey expert, Hal Poret, commissioned a consumer survey that shows an overwhelming degree of consumer recognition in the KitchenAid Mixer Design. (Ex. 4.)

Whirlpool's evidence presented herein far exceeds what courts in this Circuit have relied upon to find other marks to be strong and entitled to greater protection.  *See e.g., Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc*., 4:16-CV-1839, 214 F. Supp. 3d 573 (S.D. Tex. 2016); *Homax Prod., Inc.*, 2009 U.S. Dist. LEXIS 126699, at \*17 (holding that advertising spend of several million dollars per year, use of the mark for 27 years, and substantial market share and gross sales established "a relatively strong position in the marketplace," and rejecting defendant's argument that direct evidence (e.g., consumer surveys) is required to indicate market strength); *Quantum Fitness Corp.*, 83 F. Supp. 2d at 819 (holding plaintiff "established a relatively strong mark within the fitness industry" based on $1 million in advertising expenses over a roughly eight year period, distribution of 100,000 promotional brochures, and extensive and favorable reports in industry publications).  Whirlpool's Trademark is strong favoring a finding of confusion.

**b.      Digit 2: Defendants' Infringing Designs are Substantially Similar to Whirlpool's Trademark**

"The Fifth Circuit uses a 'subjective eyeball test' to determine whether two marks are similar." *T-Mobile US, Inc. v. Aio Wireless LLC*, 991 F. Supp. 2d 888, 921 (S.D. Tex. 2014) (quoting *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc*., 628 F.2d 500, 504 (5th Cir. 1980)).  In other words,

"[t]he similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks."  *Exxon Corp.*, 628 F.2d at 504-05; *See also RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 700 (S.D. Tex. 2009) ("The court must not restrict itself to a comparison of individual features, but must consider 'the commercial impression created by the mark as a whole.'") (citing *Amstar Corp.*, 615 F.2d at 261). "The relevant inquiry is whether, under the circumstances of use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated."  *RE/MAX Int'l, Inc.*, 655 F. Supp. 2d at 700 (quoting *Elvis Presley Enters., Inc.*, 141 F.3d at 201). "Dissimilarities in individual features may be insufficient to distinguish otherwise similar marks in the eyes of consumers, especially when the 'dominant' elements of a mark or the 'attention-getting' features are similar or identical."  *Id*. at 701 (citing *Elvis Presley Enters. Inc.*, 141 F.3d at 201-202).

Using the "subjective eyeball test" it is readily evident that the Defendants' infringing products mimic the overall look of the KitchenAid Mixer Design and every visual aspect – including the sleek design, rounded edges, bullet-shaped head, protruding attachment hub, sloped neck and rounded base:



There is no question that the most distinctive features of the KitchenAid Mixer Design are replicated in a substantially similar way in the Infringing Designs. (See, e.g., Ex. 3 at ¶ 23.)  The mere addition of Defendants' respective trademarks, COOKLEE and PHISINIC, does not diminish the likelihood of confusion where the products are so similar consumers could mistakenly presume an affiliation with Whirlpool.  *See Bd. Of Supervisors for La. State Univ. Agric. & Mech. College*, 550

F.3d at 482 n. 66 (5th Cir. 2008) ("defendant's placement of its own name on pen also bearing mark similar to plaintiffs mark does not save the day; a purchaser could well think plaintiff had licensed defendant as a second user and the addition is thus 'an aggravation, and not a justification.").   Below the '158 Registration appears next to the Infringing Mixers presented at similar angles.



Registration No. 1,711,158          PHISINIC          COOKLEE

Importantly, the question is not whether there are differences, but whether the designs are similar.   Here, they unquestionably are similar.   *Exxon Corp.,* 628 F.2d at 504-05. *Id.* at 505 ("Obviously, the greater the similarity in the design of the trademarks, the greater the likelihood of confusion.").  This digit strongly favors Whirlpool.

### c.      Digit 3: Parties Sell the Same Products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Elvis Presley Enters., Inc.*, 141 F.3d at 202 (citing *Exxon Corp.*, 628 F.2d at 505).  Here, both Whirlpool and Defendants promote, advertise, and sell precisely the same products – stand mixers.  (Ex. 3 at ¶¶ 4-10.)  Whirlpool and the Defendants are in direct competition with each other which exacerbates the likelihood of confusion. *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 421 (N.D. Tex. 2011) (finding the identical nature of the products and direct competition between the parties to weigh heavily in favor of likelihood of confusion).  This factor, therefore, heavily favors Whirlpool and confirms that confusion is likely.

### d.        Digit 4: The Purchasers and Retailers are Identical

"Differences in the parties' customer bases can lessen the likelihood of confusion." *Bd. of Regents of the Univ. of Houston Sys.*, 214 F. Supp. 3d at 589.  But here, all parties sell their stand mixers via the same retailers, namely Amazon and Wayfair. (*See* Ex. 1 at ¶ 9; Ex. 3 at ¶¶ 4-7.) Therefore, there can be no dispute that the parties target the same consumers, which strongly favors confusion. In fact, "[t]he group of consumers seeking to purchase" Defendants' products "would overlap almost completely with the group of consumers seeking to purchase" from Whirlpool; "this similarity would indicate confusion under the fourth digit."  *T-Mobile US, Inc.,* 991 F. Supp. 2d at 916 (finding the fourth digit of confusion "weighs heavily" in favor of Plaintiff) (citing *Scott Fetzer Co. v. House of Vacuums, Inc.,* 381 F.3d 477, 485 (5th Cir. 2004)). As explained above, an Amazon search for "KitchenAid Stand Mixers" returns listings with both Infringing Designs.  (Ex. 3 at ¶¶ 4-7.)  This factor, too, heavily favors a finding of confusion.

### e.        Digit 5: The Marketing Efforts are Similar

"Courts also consider … the similarity between parties' marketing efforts: 'the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." *Quantum Fitness Corp.*, 83 F. Supp. 2d at 827 (quoting *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 555 (10th Cir.), cert. denied, 525 U.S. 964 (1998)).  There can be no reasonable dispute that the parties use similar marketing efforts as the parties advertise and sell *via the same online retailers,* including Amazon and Wayfair).  Because these advertising channels are identical, this factor favors a finding of likelihood of confusion.  *See T-Mobile US, Inc.*, 991 F. Supp. 2d at 921.

### f.    Digit 6: Defendants' Intent to Confuse Strongly Favors Confusion

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement." *Am. Rice, Inc.*, 518 F.3d at 332.[4]  But, where bad faith intent is proven, "***that fact alone may be sufficient to justify the inference that there is confusing similarity***." *Id.* (*quoting Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703-04 (5th Cir. 1981) (emphasis added).

Defendants' bad faith intent is undeniable.  The Defendants were undoubtedly aware of the long-standing market leader before they adopted the Infringing Designs that copy the overall look and distinctive features of the KitchenAid Mixer Design.  This was no coincidence.  Defendants can (and do) manufacture mixers with other designs.  Defendant Sanlida even usurped Whirlpool's recent advertising slogan of "More than a Mixer" in its own advertising.  (Compare Ex. 3 at ¶ 22 to Ex. F attached to Ex. 3.)  And Defendant Avoga even uses the KitchenAid Mixer Design in its comparative (and false) advertising.  (Ex. 3, at Ex. H thereto.)



---

[4] At worst, this factor is neutral if the Court finds there is insufficient evidence of bad faith intent. *See Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 195 (5th Cir. 2018) ("If there is no evidence of intent to confuse, then this factor is neutral.").

The undeniable copying of the known market leader establishes bad faith intent. *Scott Fetzer Co. v. House of Vacuums Inc*., 381 F.3d 477, 486 (5th Cir. 2004). *See also Hutchinson v. Essence Commc'ns, Inc*., 769 F. Supp. 541, 566 (S.D.N.Y. 1991) ("The junior user's awareness of the senior user's mark 'can give rise to an inference of bad faith.'") (citation omitted); *E. & J. Gallo Winery v. Spider Webs, Ltd.*, 286 F.3d 270, 277 (5th Cir. 2002) (in a similar context, "when the senior user's trademark is famous in the marketplace and where the junior user was aware of the trademark and of its fame, a presumption of bad faith arises from the choice of the same name because it is inferable that the junior user adopted the mark for the purpose of profiting from the aura of goodwill surrounding the senior user's mark."). These facts alone are sufficient to find a likelihood of confusion, *Am. Rice, Inc*., 518 F.3d at 332, but certainly, this factor favors a finding of a likelihood of confusion.

### g.      Digit 7: Actual Confusion is Inevitable

Proof of actual confusion is not necessary. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir. 1975) ("Proof of actual confusion is not necessary – likelihood of confusion is the appropriate inquiry.") (citations omitted). But, evidence of actual confusion clearly establishes a "likelihood" of confusion. *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, (5th Cir. 2018) (Actual confusion "is the 'best evidence of a likelihood of confusion.'") (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203–04 (5th Cir. 1998)); *Terex S.D. v. Sinoboom N. Am.*, No. H-21-287, 2021 U.S. Dist. LEXIS 191168, at *35 (S.D. Tex. Aug. 16, 2021) (granting preliminary injunction without evidence of actual confusion). At this juncture, this factor is neutral.

### h.      Digit 8: The Degree of Care Also Favors Confusion

Finally, courts consider how much care potential purchasers will exercise when purchasing the parties' products. *Homax Prod., Inc. v. HoMax, Inc.*, 2009 U.S. Dist. LEXIS 126699, at *34 (S.D. Tex. Aug. 5, 2009). While stand mixers cost a few hundred dollars, these products are sold online which leads to less purchaser care when a product can be purchased with the click of a mouse.

Regardless, the Fifth Circuit also recognizes that "a high price tag alone does not negate other indicia of likelihood of confusion, especially if the goods or marks are similar." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 231 (5th Cir. 2009) (citations omitted). The Sixth Circuit likewise holds that the more similar the marks, the less significance a court should give purchaser care:

> [I]f the District Court finds that the marks are quite similar, then purchaser care will decrease the likelihood of confusion only minimally because the care and skill which a purchaser will have used when deciding which [product] to buy will not have necessarily extended to his decision regarding which retailer to buy from. That is, **confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [product] that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party**.

*Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 286 (6th Cir. 1997) (emphasis added).

Moreover, there is a potential for "initial-interest confusion" which is actionable under the Lanham Act because the junior user relies on the similarities to the senior user's mark to draw in consumers and ultimately divert them away from the senior user's product. *Bd. of Regents of the Univ. of Houston Sys*., 214 F. Supp. 3d at 598.[5] "'Initial-interest confusion gives the junior user credibility during the early stages of a transaction,' which 'can possibly bar the senior user from consideration down the road.'" *Id.* As explained by the *Bd. of Regents*' Court, the junior user misappropriates the credibility of the senior user to "bring patrons in the door." *Id*. at 599. There the Court found a preliminary injunction was warranted where the parties were competing law schools, offering the same services, through the same media, to the same target market, and the Defendant in

---

[5] *See also Luxottica Group S.P.A. v. Atl. Sunglasses LLC*, No. 4:15-CV-1795, 2017 U.S. Dist. LEXIS 217991, at *7 (S.D. Tex. Mar. 24, 2017) ("The initial interest confusion doctrine applies when 'the Lanham Act forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated.' This 'bait and switch' technique allows competitors to get a foot in the door and engage the customer by using the goodwill established by the senior user to break the ice.") (quoting *ADT, LLC v. Capital Connect, Inc*., 145 F. Supp. 3d 671, 690 (N.D. Tex. 2015)).

its advertising claimed its school was better:

> [N]ot only does the [initial-interest] confusion afford Defendant credibility during the early stages of a transaction, it does so at the direct expense of the [Plaintiff's school]. Indeed, while Defendant notes that consumers' confusion will dissipate as soon as they visit Defendant's homepage, the most prominent portion of the webpage is essentially a list of the  best reasons to choose Defendant's law school over [Plaintiff's school].

*Id*. at 600-601. The same is true here. It is likely that Defendants are able to draw in consumers initially because of the similarity to the KitchenAid Mixer Design both online or even in a post-sale context.  Defendants then divert customers away from Whirlpool's product with slightly lower prices and unsubstantiated claims that Defendants' products are of equal or superior quality and design – which they are not.  (Ex. 2, Snyder Decl.)  This factor favors finding a likelihood of confusion.

### i.        Summary – There is Clearly a Likelihood of Confusion

Whirlpool is not required to prove that all digits favor confusion.  *Elvis Presley Enters*., 141 F.3d at 194 ("No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on any these 'digits of confusion.'").  It is sufficient if, as in this case, on balance the factors as a whole weigh in Whirlpool's favor. That is indeed the case. For the reasons outlined above, the Court should find that there is a substantial likelihood of confusion.

### B.        If Not Enjoined, Whirlpool Will be Irreparably Harmed by Defendants' Conduct

Under the Lanham Act, a proprietor's loss of control over its own reputation and goodwill is deemed an irreparable injury for which preliminary relief is appropriate.  *Quantum Fitness Corp*., 83 F. Supp. 2d at 831; *TGI Friday's, Inc v. Great Northwest Rests., Inc*., 652 F. Supp. 2d 763, 772 (N.D. Tex. 2009). This is particularly true when the parties directly compete.  *See Clearline Tech. Ltd. v. Cooper B-Line Inc.*, 948 F. Supp. 2d 691, 715 (S.D. Tex. 2013) ("Where the infringement involves direct competitors, a finding of irreparable harm may well be appropriate").  Indeed, a rebuttable presumption of irreparable harm was recently codified in the Trademark Modernization Act of 2020,

15 U.S.C. § 1116(a) (effective as of December 2021), a Congressional acknowledgement that the loss of control over reputation and goodwill is difficult to quantify.  Consequently, monetary damages are not adequate to compensate the mark owner for the injury sustained.

Whirlpool does not have any control over the quality of Defendants' stand mixers.  And Whirlpool is at a significant risk of loss of well-earned reputation given the similarities that may cause consumers to, at a minimum, presume an affiliation between the Whirlpool and Defendants.  This harm is amplified where Defendants' products manufactured overseas appear to be well below the standards of quality consumers have come to expect from Whirlpool's stand mixers. Indeed, Whirlpool engineer Joseph Snyder carefully analyzed the model 1522 Infringing Designs and attests that they are clearly inferior to the Whirlpool mixers bearing the KitchenAid Mixer Design in construction, craftsmanship and performance.  (Ex. 2 at ¶¶ 6-15.)  In short, to Whirlpool's detriment, Defendants are trading on the goodwill and reputation of the KitchenAid Mixer Design in order to market and sell inferior copycat products at a lower price.

**C.**    **The Balance of Hardship Weighs Heavily in Favor of Whirlpool**

Whirlpool has been using its signature shape in connection with the promotion, advertisement, and sale of stand mixers since 1937.  If Defendants' infringement is allowed to continue, Whirlpool will continue to suffer dilution of the strength of its protected KitchenAid Mixer Design, loss of customers and revenue, and harm to its reputation and goodwill.  *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473 (E.D. Tex. 2020), 2020 U.S. Dist. LEXIS 28613, at *42 ("The burden of losing control of its mark, the loss of customers, and the harm to [mark owner's] reputation and goodwill are greater than the cost to Defendants, who have failed to identify any cost to them not created by their own likely infringing activities."); *see also TGI Friday's Inc.* 652 F. Supp. 2d at 773 (noting that "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the

defendants") (citation omitted).  Importantly, Defendants are allowed to sell non-infringing mixer designs in the United States and they do currently.  Thus, there can be no hardship to Defendants if they discontinue the 1522 model's design.

The balance of hardships weighs in Whirlpool's favor.

**D.      A Preliminary Injunction Will Not Disserve the Public Interest**

A preliminary injunction would serve the public interest because it is the public's right not to be deceived or confused.  *Blue Bell Creameries, L.P. v. Denali Co., LLC*, No. H-08-0981, 2008 U.S. Dist. LEXIS 58083, at *21 (S.D. Tex. July 31, 2008) (citing *S&R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 379 (3d Cir. 1992)). The public also has a substantial interest in being able to confidently choose products it knows and has learned to trust over the years.  And public interest is "always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp.*, 83 F. Supp. 2d at 832 (citations omitted).  Moreover, the availability of alternative non-infringing stand mixer designs confirms that preliminarily enjoining the Infringing Designs would not disserve the public interest. In sum, an injunction would not adversely affect the public interest. This factor weighs in favor of granting an injunction.

## IV.      CONCLUSION

For the foregoing reasons, Whirlpool respectfully requests that this Court grant its Motion for a Preliminary Injunction and enter the injunction prohibiting Defendants from selling, distributing, advertising or promoting the Infringing Designs during the pendency of this lawsuit.

Respectfully submitted,

Dated:  January 31, 2022

*/s/ Melissa R. Smith*
Melissa Richards Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

22

Marc Lorelli (Michigan Bar No. P63156)
LEAD ATTORNEY
Chanille Carswell (Michigan Bar No. P53754)
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email: mlorelli@brookskushman.com
         ccarswell@brookskushman.com

*Counsel for Plaintiffs*