IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WHIRLPOOL CORPORATION and WHIRLPOOL PROPERTIES, INC., <br><br>*Plaintiffs*, <br><br>v. <br><br>SHENZHEN SANLIDA ELECTRICAL TECHNOLOGY CO., LTD. and SHENZHEN AVOGA TECHNOLOGY CO. LTD., <br><br>*Defendants*. | Case No. 2:22-CV-00027-JRG-RSP |

## REPORT AND RECOMMENDATION

Before the Court, defendants Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") and Shenzhen Avoga Technology Co. Ltd. ("Avoga") move, Dkt. No. 26, to stay an order of preliminary injunction previously imposed, Dkt. No. 23. After consideration of the motion, responsive briefing, and the law, the motion should be **DENIED**.

I.  BACKGROUND

Plaintiffs Whirlpool Corporation and Whirlpool Properties, Inc. (collectively "Whirlpool") filed the instant suit against Defendants alleging trademark infringement of U.S. Trademark Nos. 1,711,158 and 5,510,871 (collectively "Asserted Marks"), Dkt. No. 1, and moved for preliminary injunction, Dkt. No. 6. Whirlpool subsequently moved for a preliminary injunction hearing. Dkt. No. 9. Therein, Whirlpool averred that (1) Whirlpool sent Sanlida and Avoga copies of the complaint and of the motion for preliminary injunction via email, personal service, and text messages, (2) Whirlpool received a read receipt responsive to said email sent to Sanlida, (3) a legal representative of Sanlida accepted and signed receipt of personal service, and (4) a legal representative of Avago accepted and signed receipt of personal service. *Id.* at pp 5-8.

The Court set a hearing date and ordered Whirlpool to again notify Defendants via email, personal service, and text. Dkt. No. 10. Whirlpool complied. Dkt. No. 11. Counsel for Defendants was present for the hearing and admitted that the Defendants had received notice of the hearing. Dkt. No. 20-4 7:16-18. After the hearing, the undersigned issued a Report and Recommendation to grant Whirlpool's motion for preliminary injunction, Dkt. No. 18, which was adopted by the Court, Dkt. No. 23. Defendants filed a notice of appeal, Dkt. No. 24, and filed the instant motion to stay, Dkt. No. 26.

## II.     LAW

"[A]n interlocutory … judgment in an action for injunction" is "not stayed after being entered, even if an appeal is taken" "[u]nless the court orders otherwise." Fed. R. Civ. P. 62(c). Upon consideration of a motion to stay pending appeal, the Court considers the following factors: (1) the movant's likelihood of success on the merits, (2) the harm to the movant if the stay is not granted, (3) the harm to the nonmovant if the stay is granted, and (4) the public interest implicated in the outcome. *Prudential Mortg. Cap. Co. v. Faidi*, 444 F. App'x 732, 737 (5th Cir. 2011) (citing *Arnold v. Garlock*, 278 F.3d 426, 438-39 (5th Cir. 2010)).

## III.    ANALYSIS

### A.     Likelihood of Success on the Merits

Defendants contend their appeal of the preliminary injunction is likely to succeed by arguing that the Court erred in finding that service of process was not necessary to impose an injunction, by not requiring Whirlpool to post security, and by finding that Whirlpool is likely to succeed on the merits of its trademark infringement claim. Regarding the latter, a trademark holder must show possession of a legally protectable trademark and a likelihood of confusion as to source, affiliation or sponsorship resulting from the alleged infringer's use of a competing mark.

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). Defendants argue that the trademark is invalid as functional and that there is no likelihood of confusion. We address separately service, security, validity, and likelihood of confusion below.

### i. Service of Process

During the hearing, in its objection to the Report and Recommendation, and once again in its motion to stay, Defendants argue that a preliminary injunction is invalid without perfected service of process. Dkt. No. 21 7:4-25; Dkt. No. 20 p 3; Dkt. No. 26 p 8 ("Defendants are likely to succeed in challenging the Court's finding that preliminary injunction is valid without perfected service of process on Defendants."); Dkt. No. 30 p 2 ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). However, "Rule 65(a) does not require service of process." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978). Defendants do not expressly argue that the Court is without personal jurisdiction, but personal jurisdiction is not dependent upon service of process. As a result, this is not a case involving a "challenge to jurisdiction … interposed on an application for preliminary injunction." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) (quoting *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 59 (2d Cir.1981) (internal quotation marks omitted).

### ii. Security

Defendants argue for the first time that an injunction is improper without Whirlpool posting security in the event of a wrongfully issued injunction. Fed. R. Civ. P. 65(c). Whirlpool replies that Defendants never raised the issue of security before the injunction was entered and have thus

waived the requirement. Whirlpool further argues that Defendants have failed to provide the Court with any information upon which to determine a value sufficient for security.

Interpreting the language contained in Federal Rule of Civil Procedure 65(c), the Fifth Circuit has determined that the imposition of security and the value thereof is within the discretion of the court. *Corrigan Dispatch*, 569 F.2d at 303 (5th Cir. 1978) ("The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all."); see also *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (finding that "the district court did not violate Rule 65(c) by failing to compel Kaepa to post a bond.").

While there is little information from which to determine a value sufficient to remedy Defendants' potential losses from a wrongful injunction and the Defendants offer none, the Court will order Whirlpool to post a bond in the sum of $10,000. The record does contain information about the products at issue but little about the volume of infringing sales. In the unlikely event of wrongful injunction, Whirlpool may challenge Defendants' claim to the sum. *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989), *on reconsideration sub nom. Continuum Co. v. Incepts, Inc.*, 901 F.2d 1111 (5th Cir. 1990) (posting security "assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured").

### iii. Validity of Trademark

Defendants argue that the Asserted Marks are invalid as functional. "[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 165 (1995).

4

"Expanding upon the meaning of this phrase, [the Supreme Court has] observed that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *Id.* (quoting *Qualitex*, 514 U.S. at 156). "It is proper to inquire into a 'significant non-reputation-related disadvantage' in cases of esthetic functionality" where there is "no indication that" a design feature "had any bearing on the use or purpose of the product or its cost or quality." *Id*. at 33; see also *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355-56 (5th Cir. 2002) (citing *TrafFix*, 532 U.S. at 33-35).

Defendants argue that Whirlpool's marks are functional because "a) a mixer head; and b) an L-Shape pedestal including a base portion (which holds the mixing bowl) and an upstanding support arm (which connects the base to the mixer head) … are the reasons a stand food mixer works." Dkt. No. 20 p 4. Whirlpool responds that the market includes several non-infringing but functionally equivalent competing designs. *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1341 ("Since the effect upon competition is really the crux of the matter, it is, of course, significant that there are other alternatives available.") (internal quotation marks omitted); *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (2002) ("the availability to competitors of functionally equivalent designs"); *Id.* at 1274-76 (holding that *TrafFix* "does not render… the *Morton-Norwich* factors erroneous").

Defendants' description of the Asserted Marks focuses on the functional features of a food mixer and fails to recognize that these functional features can have a variety of forms. *Morton-Norwich*, 671 F.2d at 1342 ("[A] molded plastic bottle can have an infinite variety of forms or designs and still function to hold liquid. No one form is necessary or appears to be 'superior.' "). For example, the Asserted Marks depict (1) a flat base with smooth logarithmic-like surfaces rising from the base and approaching in a tapered manner to form the L-shaped pedestal and (2) and a

5

capsule atop the taper to form the support arm. On the other hand, the competing but non-infringing mixers include (1) a flat base with parallel surfaces rising from the base without approach or taper to form the L-shaped pedestal and (2) a support arm bearing the same profile as the base and parallel surfaces. Despite these esthetic differences, there is no evidence that the competing but non-infringing mixers are of lesser quality, more cost prohibitive, or functionally different because of the esthetic difference. In other words, there is no evidence that the design embodied in the Asserted Marks is "essential to the use or purpose of the article." *TrafFix*, 532 U.S. at 32.

Defendants' argument that there is no likelihood of confusion based upon the price differences, *infra* III.A.iv, precludes an argument that the Asserted Marks affect the cost or quality. *Id.* Finally, Defendants do not argue that the Asserted Marks put competitors at a significant non-reputation-related disadvantage. If anything, the presence of non-infringing competing mixers with rectilinear design motifs supports a conclusion that the Asserted Marks do not functionally limit the field. Defendants' reliance on *Eppendorf* for the proposition that "[t]he availability of alternative designs is irrelevant" is misleading without additional context from the portion of the opinion in which this text is found. 289 F.3d 351, 355 (5th Cir. 2002). Upon a closer inspection, the cited text is clearly limited to functional features. *Id.* Defendants also argue that the existence of now expired utility patents which display a mixer bearing a design substantially similar to that of the Asserted Marks. However, the claim elements do not require any particular esthetic form or that form depicted by the Asserted Marks.

        iv.        **Likelihood of Confusion**

Defendants first argue that the Court failed to consider evidence of unauthorized third party uses of the mark or related licenses. Dkt. No. 26 p 12. However, Defendants fail to present any

such evidence for our consideration. *Id.* Defendants next argue that because of the attention and care consumers give disparate pricing, it is highly unlikely that a consumer would confuse Whirlpool's relatively more expensive food mixer with Defendants' relatively cheaper alternative. Dkt. No. 30 p 4-5. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (listing "the degree of care exercised by potential purchasers" as one of eight "nonexhaustive" factors for courts to consider when assessing the likelihood of confusion). Again, the Defendants fail to point to any evidence in the record of Whirlpool's or Defendant's pricing for our consideration. Even if Defendant had presented pricing evidence for this Court's consideration, "[n]o single factor is dispositive," *Smack Apparel*, 550 F.3d at 478, and "a high price tag alone does not negate other indicia of likelihood of confusion, especially if the goods or marks are similar," *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 231 (5th Cir. 2009).

In the absence of evidence bearing on the Defendants' intent, advertising, and actual confusion, other indicia of likelihood of confusion include "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, [and] (4) the identity of the retail outlets and purchasers." *Smack Apparel*, 550 F.3d at 478 (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000). In the instant suit, the Asserted Marks are of the trade dress type, the design of Defendants' allegedly infringing products includes very similar curves and geometries to those curves and geometries embodied in the Asserted Marks, the Defendants' allegedly infringing products and Whirlpool's products bearing the Asserted Marks are in direct competition in that they are both personal (as opposed to commercial) food mixers and are both available for purchase on Amazon and Wayfair. These factors support a conclusion that there is a likelihood of confusion.

### B. Balance of Harms

The Lanham Act entitles Whirlpool to a presumption of irreparable harm upon a finding that Whirlpool is likely to succeed on the merits of its trademark infringement claim. 15 U.S.C. § 1116(a). As already discussed *supra* III.A.iii-iv, Defendants' arguments are not persuasive, and as a result, Whirlpool is likely to succeed on the merits. Whirlpool is thus entitled to a rebuttable presumption of irreparable harm.

Defendants argue that they will suffer irreparable harm in the form of lost profits and lost customer goodwill by following the preliminary injunction's prohibition from further sales of the allegedly infringing products. However, "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991). Accordingly, such hardship is insufficient to outweigh the presumption of irreparable harm Whirlpool will endure to its reputation and goodwill. *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n,* 532 F.Supp. 1376, 1389 (S.D.Tex.1982), *aff'd,* 701 F.2d 408 (5th Cir.1983).

To the extent that Defendants argue that irreparable harm flows from the preliminary injunction's requirement to destroy allegedly infringing product, Whirlpool has conceded that such a requirement is not necessary at this time. Accordingly, the preliminary injunction should be modified to remove that requirement and direct that the items be held by Defendants pending further order.

### C. Public Interest

Finally, the Court finds that the entry of a preliminary injunction will not disserve the public. Defendants contend otherwise arguing that they are likely to succeed on the merits and

8

that Whirlpool has not suffered any irreparable harm. We disagree. *Supra* III.A. Further, there exists a strong public interest in the protection of trademarks to minimize confusion as to source, affiliation, and sponsorship. See, *e.g.*, *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 773 (N.D. Tex. 2009). Accordingly, the public will not be disserved by a preliminary injunction prohibiting the sale of the allegedly infringing products in the United States.

### IV.  Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' motion to stay the preliminary injunction be **DENIED,** but that the injunction be modified to provide that Defendants are required to recall and hold all allegedly infringing mixers and related matters and provide proof of such recall and hold until otherwise ordered by this Court.

Whirlpool is hereby **ORDERED** to post a bond or security in the amount of $10,000 with the Clerk of Court within 10 days.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 15th day of July, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

9