**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| WHIRPOOL CORPORATION AND WHIRPOOL PROPERTIES, INC., | § § § | CASE No: 2:22-CV-00027-JRG-RSP |
| *Plaintiffs*, | § § | Honorable Judge: Rodney Gilstrap |
| v. | § § | |
| SHENZHEN SANLIDA ELECTRICAL TECHNOLOGY CO., LTD. and SHENZHEN AVOGA TECHNOLOGY CO. LTD., | § § § § § | |
| *Defendants*. | § | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO**
**PLAINTIFFS' COMPLAINT WITH COUNTERCLAIMS**

Defendants Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") and Shenzhen Avoga Technology Co. Ltd. ("Avoga") (collectively, "Defendants") hereby respond to Plaintiffs Whirlpool Corporation and Whirlpool Properties, Inc.'s ("Plaintiffs") Complaint and assert counterclaims as follows:

## **INTRODUCTION**

1.  Paragraph 1 contains statements to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint, and, on that basis, deny each such allegation.

2.  Defendants deny that it in any way violated fair competition. Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 2 of the Complaint, and, on that basis, deny each such allegation.

3.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and, on that basis, deny each such allegation.

4.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and, on that basis, deny each such allegation.

5.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint, and, on that basis, deny each such allegation.

6.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and, on that basis, deny each such allegation.

7.  Defendants deny the allegations in Paragraph 7 of the Complaint.

8.  Defendant Sanlida admits that it introduced its stand mixers and has been selling online.

9.   Defendants Avoga admits that it introduced its stand mixers and has been selling online, but denies that it has been selling on Wayfair.

10. Defendants deny the allegations in Paragraph 10 of the Complaint.

11. Defendants deny the allegations in Paragraph 11 of the Complaint.

12. Defendants deny the allegations in Paragraph 12 of the Complaint.

13. Defendants deny the allegations in Paragraph 13 of the Complaint.

## **THE PARTIES**

14. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and, on that basis, deny each such allegation.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint, and, on that basis, deny each such allegation.

16. Sanlida is a Chinese corporation with a principal place of business at No. 27, Jiangjunmao Industrial area, Wulian community, Long Gang Street, Long Gang District, Shenzhen City, Guangdong Province, China.

17. Avoga is a Chinese corporation with principal place of business at Room 504, No. 15, Feimei Road, Liulian Community, Pingshan Street, Pingshan District, Shenzhen City, Guangdong Province, China.

18. Paragraph 18 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 18 of the Complaint.

19. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and, on that basis, deny each such allegation.

## NATURE AND BASIS OF ACTION

20. Defendants admit that the Complaint purports to state a claim for trademark and trade dress infringement, dilution, and unfair competition under federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and (c), and under the laws of the State of Texas, but deny they have committed any acts of infringement or unfair competition as alleged by Plaintiffs, and deny they are in any way liable to Plaintiffs under these or any other claims.

## JURISDICTION

21. Defendants admit that Plaintiffs purport to assert the following federal claims: Count I, Federal Trademark Infringement (15 U.S.C. § 1114(1)); Count II, Trade Dress Infringement (15 U.S.C. § 1125(a)); and Count III, Federal Unfair Competition (15 U.S.C. § 1125(a)), Count IV, Federal Dilution, (15 U.S.C. § 1125(c)), and Counts V-VIII, related Texas State law claims.

22. Paragraph 22 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 22 of the Complaint.

23. Defendants offered to sell the alleged infringing products online but at this point are without knowledge or information as to whether any products were sold to Eastern District of Texas, therefore, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and, on that basis, deny each such allegation.

24. Defendants deny that this Court has jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(2).

25. For purposes of this action only, Defendants do not contest that venue is proper in this District but deny that Defendants may be sued in any federal court.

# FACTUAL BACKGROUND

## Whirlpool and Its Business

26. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and, on that basis, deny each such allegation.

27. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and, on that basis, deny each such allegation.

28. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint, and, on that basis, deny each such allegation.

29. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and, on that basis, deny each such allegation.

30. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and, on that basis, deny each such allegation.

31. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and, on that basis, deny each such allegation.

32. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint, and, on that basis, deny each such allegation.

## Whirlpool's Asserted Rights

33. Defendants admit that U.S. Trademark in Ex. A appears on its face to have a registration number No. 1,711,158. Defendants deny the remaining allegations in Paragraph 33.

34. Defendants deny the allegations in Paragraph 34 of the Complaint.

35. Defendants admit that U.S. Trademark in Ex. B appears on its face to have a registration number No. 5,510,871. Defendants deny the remaining allegations in Paragraph 35.

36. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and, on that basis, deny each such allegation.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and, on that basis, deny each such allegation.

38. Defendants deny the allegations in Paragraph 38 of the Complaint.

39. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and, on that basis, deny each such allegation.

40. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint, and, on that basis, deny each such allegation.

41. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and, on that basis, deny each such allegation.

42. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint, and, on that basis, deny each such allegation.

43. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Complaint, and, on that basis, deny each such allegation.

44. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Complaint, and, on that basis, deny each such allegation.

**Defendant Sanlida's Activities**

45. Sanlida manufactures kitchen appliances, including mixers. Sanlida denies the remaining allegations in Paragraph 45.

46. Sanlida admits that it sells stand mixers but deny any infringement. Sanlida further admits that it sells the products under the name of CookLee. Sanlida denies the remaining allegations in Paragraph 46.

47. Sanlida admits that it advertised and offer to sell its mixers in the United States, but denies any infringement. In addition, Sanlida is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 of the Complaint, and, on that basis, deny each such allegation.

48. Sanlida is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 of the Complaint, and, on that basis, deny each such allegation.

49. Paragraph 49 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 70 of the Complaint.

50. Sanlida is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint, and, on that basis, deny each such allegation.

51. Sanlida is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint, and, on that basis, deny each such allegation.

52. Paragraph 52 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 52 of the Complaint.

53. Paragraph 53 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 53 of the Complaint.

54. Sanlida admits that it advertised and sold its mixers throughout the United States but denies any infringement. In addition, Sanlida is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54 of the Complaint, and, on that basis, deny each such allegation.

55. Paragraph 55 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 55 of the Complaint.

56. Sanlida denies the allegations in Paragraph 56 of the Complaint.

57. Sanlida denies the allegations in Paragraph 57 of the Complaint.

58. Sanlida denies the allegations in Paragraph 58 of the Complaint.

59. Sanlida denies the allegations in Paragraph 59 of the Complaint.

60. Sanlida denies the allegations in Paragraph 60 of the Complaint.

61. Sanlida denies the allegations in Paragraph 61 of the Complaint.

62. Sanlida denies the allegations in Paragraph 62 of the Complaint. Instead, if Defendant is restrained by this Court, Whirlpool will continue to utilize the same strategy to monopoly the mixer market.

63. Sanlida denies the allegations in Paragraph 63 of the Complaint.

64. Sanlida denies the allegations in Paragraph 64 of the Complaint.

**Defendant Avoga's Activities**

65. Admit that Avoga is in business of selling kitchen and other appliances, including stand mixers. Avoga denies the remaining allegations in Paragraph 65.

66. Admit that Avoga offered to sell its mixers using PHISINIC on its mixers.

67. Avoga is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint, and, on that basis, deny each such allegation.

68. Avoga admits that it advertised and sold its mixers throughout the United States, but denies any infringement. In addition, Avoga is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 68 of the Complaint, and, on that basis, deny each such allegation.

69. Avoga is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Complaint, and, on that basis, deny each such allegation.

70. Paragraph 70 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 70 of the Complaint.

71. Avoga denies the allegations in Paragraph 71 of the Complaint.

72. Avoga is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Complaint, and, on that basis, deny each such allegation.

73. Paragraph 73 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 73 of the Complaint.

74. Paragraph 74 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 74 of the Complaint.

75. Avoga admitted that it has sold product to the state of Texas, but denies the remaining allegations in Paragraph 75 of the Complaint.

76. Paragraph 76 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants deny the allegations in Paragraph 76 of the Complaint.

77. Avoga denies the allegations in Paragraph 77 of the Complaint.

78. Avoga denies the allegations in Paragraph 78 of the Complaint.

79. Avoga denies the allegations in Paragraph 79 of the Complaint.

80. Avoga denies the allegations in Paragraph 80 of the Complaint.

81. Avoga denies the allegations in Paragraph 81 of the Complaint.

82. Avoga denies the allegations in Paragraph 82 of the Complaint.

83. Avoga denies the allegations in Paragraph 83 of the Complaint. Instead, if Defendant is restrained by this Court, Whirlpool will continue to utilize the same strategy to monopoly the mixer market.

84. Avoga denies the allegations in Paragraph 84 of the Complaint.

85. Avoga denies the allegations in Paragraph 85 of the Complaint.

86. Paragraph 86 contains definition to which no answer is required. To the extent an answer is required, Defendants' mixers are not infringing, and, on that basis, deny each such allegation.

## COUNT I: Federal Trademark Infringement

87. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 86 of the Complaint as if fully set forth herein.

88. Paragraph 88 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 88 of the Complaint, and, on that basis, deny each such allegation.

89. Paragraph 89 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 89 of the Complaint, and, on that basis, deny each such allegation.

90. Paragraph 90 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 90 of the Complaint, and, on that basis, deny each such allegation.

## COUNT II: Trade Dress Infringement

91. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92. Paragraph 92 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the

truth of the remaining allegations in Paragraph 92 of the Complaint, and, on that basis, deny each such allegation.

93. Paragraph 93 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 93 of the Complaint, and, on that basis, deny each such allegation.

94. Paragraph 94 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 94 of the Complaint, and, on that basis, deny each such allegation.

95. Paragraph 95 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 95 of the Complaint, and, on that basis, deny each such allegation.

96. Paragraph 96 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 96 of the Complaint, and, on that basis, deny each such allegation.

97. Paragraph 97 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 97 of the Complaint, and, on that basis, deny each such allegation.

## COUNT III: Federal Unfair Competition

98. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 97 of the Complaint as if fully set forth herein.

99. Defendants deny the allegations in Paragraph 99 of the Complaint.

100. Paragraph 100 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 100 of the Complaint, and, on that basis, deny each such allegation.

101. Paragraph 101 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 101 of the Complaint, and, on that basis, deny each such allegation.

102. Paragraph 102 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 102 of the Complaint, and, on that basis, deny each such allegation.

## COUNT IV: Federal Trademark Dilution

103. Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 102 of the Complaint as if fully set forth herein.

104. Defendants deny the allegations in Paragraph 104 of the Complaint.

105. Defendants deny the allegations in Paragraph 105 of the Complaint.

106. Defendants did not use Whirlpool's Trademarks or Trade Dress, therefore, denies the allegations in Paragraph 106 of the Complaint.

107.     Defendants did not use Whirlpool's Trademarks or Trade Dress, therefore, denies the allegations in Paragraph 107 of the Complaint.

108.     Paragraph 108 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 108 of the Complaint, and, on that basis, deny each such allegation.

109.     Paragraph 109 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 109 of the Complaint, and, on that basis, deny each such allegation.

110.     Paragraph 110 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 110 of the Complaint, and, on that basis, deny each such allegation.

111.     Paragraph 111 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 111 of the Complaint, and, on that basis, deny each such allegation.

## COUNT V: Trademark and Trade Dress Infringement
## Under the Common Law of Texas

112.     Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 111 of the Complaint as if fully set forth herein.

113.     Paragraph 113 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as

to the truth of the remaining allegations in Paragraph 113 of the Complaint, and, on that basis, deny each such allegation.

114.	Paragraph 114 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 114 of the Complaint, and, on that basis, deny each such allegation.

### COUNT VI: Injury to Business Reputation or Trademark or Trade Dress Under Texas Business and Commerce Code

115.	Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 114 of the Complaint as if fully set forth herein.

116.	Paragraph 116 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 116 of the Complaint, and, on that basis, deny each such allegation.

117.	Paragraph 117 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 117 of the Complaint, and, on that basis, deny each such allegation.

118.	Paragraph 118 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 118 of the Complaint, and, on that basis, deny each such allegation.

### COUNT VII:  Texas Common Law Unfair Competition

119.　　Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 118 of the Complaint as if fully set forth herein.

120.　　Paragraph 120 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 120 of the Complaint, and, on that basis, deny each such allegation.

121.　　Paragraph 121 contains legal conclusion to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 121 of the Complaint, and, on that basis, deny each such allegation.

122.　　Defendants deny the allegations in Paragraph 122 of the Complaint.

123.　　Paragraph 123 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 123 of the Complaint, and, on that basis, deny each such allegation.

### COUNT VIII:  Unjust Enrichment

124.　　Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 123 of the Complaint as if fully set forth herein.

125.　　Defendants deny the allegations in Paragraph 125 of the Complaint.

126.　　Defendants deny the allegations in Paragraph 126 of the Complaint.

127.　　Paragraph 127 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as

to the truth of the remaining allegations in Paragraph 127 of the Complaint, and, on that basis, deny each such allegation.

128.     Paragraph 128 contains legal conclusions to which no answer is required. To the extent an answer is required, Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 128 of the Complaint, and, on that basis, deny each such allegation.

## DEMAND FOR JURY TRIAL

Plaintiffs' Jury Demand does not require admission or denial.

## RESPONSE TO PRAYER FOR RELIEF

With respect to Plaintiffs' Prayer for Relief, Defendants deny that Plaintiffs are entitled to the judgment and relief requested  in Paragraphs 1-11.

## AFFIRMATIVE DEFENSES

Without admitting that it bears the burden of proof to any of them, Defendants assert the following defenses in response to the allegations in the Complaint.

## FIRST DEFENSE
## (NON-INFRINGEMENT)

Defendants do not infringe of any Plaintiffs' Trademarks or Trade Dress.

## SECOND DEFENSE
## (INVALIDITY)

The Trademarks and Trade Dress are each invalid due to functionality.

## THIRD DEFENSE
## (PROSECUTION HISTORY ESTOPPEL)

Plaintiffs are estopped from bringing claim of infringement against any of Defendants' mixers due to prosecution history estoppel.

## FOURTH DEFENSE
## (EQUITY)

Plaintiffs are barred in whole or in part under principles of equity, including without limitation, acquiescence, prosecution laches, estoppel, waiver, misconduct, unfair competition, unclean hands, and/or other equitable defenses.

## FIFTH DEFENSE
## (NOT AN EXCEPTIONAL CASE)

Plaintiffs cannot prove that this is an exceptional case.

## SIXTH DEFENSE
## (NO WILLFUL INFRINGEMENT)

Plaintiffs are not entitled to enhanced damages because Defendants have not intentionally, willfully, or deliberately infringed any of Plaintiffs' Trademarks or Trade Dress, or acted with egregious conduct.

## RESERVATION OF DEFENSES

Defendants reserve the right to assert and rely on any additional defenses and affirmative defenses that may come available or apparent, and to amend its answer and/or defenses.

## DEFENDANTS SANLIDA AND AVOGA'S COUNTERCLAIMS

Defendants-Counterclaimants Shenzhen Sanlida Electrical Technology Co., Ltd. ("Sanlida") and Shenzhen Avoga Technology Co. Ltd. ("Avoga") (collectively, "Counterclaimants") hereby assert the following Counterclaims against Whirlpool Corporation and Whirlpool Properties, Inc. (collectively, "Whirlpool") as follows:

## NATURE OF THE ACTION

1. This lawsuit relates to the electronic stand mixers. Whirlpool engaged in an anticompetitive campaign by attempting to improperly use trademark laws to monopolize use of the descriptive shape and functions associated with a mixer or mixing machine. Counterclaimants brought these

counterclaims to put an end to Whirlpool's anticompetitive behavior and recover damages suffered by Counterclaimants. In particular, the counterclaims seek declaratory judgment of non-infringement and invalidity of the 3D Trademark with Registration No. 1,711,158 (the '158 mark) and the 2D Trademark with Registration No. 5,510,871 (the '871 mark). This is also a civil action seeking a judgment of unfair competition.

## PARTIES

2. Sanlida is a Chinese corporation with a principal place of business at No. 27, Jiangjunmao Industrial area, Wulian community, Long Gang Street, Long Gang District, Shenzhen City, Guangdong Province, China.

3. Avoga is a Chinese corporation with principal place of business at Room 504, No. 15, Feimei Road, Liulian Community, Pingshan Street, Pingshan District, Shenzhen City, Guangdong Province, China.

4. Whirlpool Properties, Inc. is a Michigan corporation having its principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan 49085.

5. Whirlpool Corp. is a Delaware corporation, having its principal office and place of business at 2000 N M-63, Benton Harbor, Michigan 49022.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1338 because the action arises under Section 2 of the Sherman Act, Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and the Lanham Act, 15 U.S.C. § 1051 et seq. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Whirlpool because they have submitted to the jurisdiction of this Court through the filling of its Complaint against Counterclaimants.

8.  Venue is proper in this Court because Whirlpool filed the Complaint in this action.

## FACTUAL BACKGROUND

### Counterclaimant Sanlida

9.  The story of Sanlida began in Shenzhen, China, where Sanlida was established in 2014.

10. Sanlida is a manufacturer factory manufacturing small appliances which also does Original Design Manufacturing ("ODM") and Original Equipment Manufacturing ("OEM"). Its R&D team has over one hundred employees.

11. Salinda manufactures a variety of types of stand mixers such as the stand mixer, hand blender, ice maker, food processor, juicers, soda maker, vacuum sealer, and much more. Salinda owns numerous patents for its products including stand mixers, and Salinda has been selling stand mixers and other appliances incorporating its patents.

### Counterclaimant Avoga

12. Avoga is a company in China and a customer of Salinda who had purchased the SM-1522 YM Mixers (the "Product SM 1522").

13. Avoga sells the Product SM 1522 on Amazon under the brand name PHISINIC. Avoga owns trademark registrations including U.S. Trademark Registration 8,8459,897 for PHISINIC in connection with Electric food blenders, Electric mixers for household purposes, electric juicers, etc.

14. PHISINIC was used as a trade name for Avoga's Stand Mixers since as early as November 6, 2017. As a result, PHISINIC has attained valuable rights and goodwill in the mark PHISINC.

### Whirlpool

15. Whirlpool are the largest manufacturers, marketers, and distributors of residential and commercial appliances in the North American market, with fascial yearly revenues of roughly 20

billion dollars. Whirlpool employs roughly 78,000 employees worldwide and operates more than 70 manufacturing and technology research centers globally.

16. Whirlpool own numerous brands such as KitchenAid, Maytag, JennAir, Amana, Inglis Estate, and many other brands around the world. One of the most popular brands of is the KitchenAid Mixers. According to its website, Whirlpool have been in operation since November 11, 1911. The brand, KitchenAid, was formed in 1919. It was invented given to make sure the consumers get the most out of making, and whether the consumers cook, bake, brew, or blend, anything consumers want to do in the kitchen, the consumers can do with KitchenAid.

17. Upon information and belief, KitchenAid is the leading brand for countertop stand mixers and captures the majority market share in the United States. KitchenAid also accounts for a good fair share of market share in other countries around the globe.

18. Upon information and belief, in May 2021, Whirlpool sold their majority interest in Whirlpool China to Galanz.

**Whirlpool's Alleged Trademarks And Trade Dress Rights**

19. Whirlpool alleged they have two trademark registrations, the 3D Trademark with Registration No. 1,711,158 (the '158 mark)[1] and the 2D Trademark with Registration No. 5,510,871 (the '871 mark).

---

[1] In the late 1990s, Whirlpool obtained a trademark registration (Registration No. 1,711,158) for the symbol "configuration of the mixing machine" for use on its KitchenAid Mixers.

 

*See* Compl. ¶¶ 33, 35.

20. Both the '158 Mark and the '871 Mark consist of three parts: a base portion to hold the stand mixer, an upwardly sweeping pedestal to connect the base portion and the mixer head, and a mixer head to encase a motor and associated electronic motor controls. It is apparent that the design with a base portion and sweeping pedestal connecting the parts and to hold for the bater mixing indicates that it is the reason that the mixer or mixing machine works.

## The '158 Mark

21. In the late 1990s, Defendants obtained a trademark registration (Registration No. 1,711,158) for the symbol "configuration of the mixing machine" for use on its KitchenAid Mixers.

22. As Whirlpool stated in the initial trademark application of the '158 Mark, "[t]he mark consists of the configuration of the mixing machine…" *See* Exhibit 1, p.6, for the application filed on July 12, 1990.[2]

23. Further, USPTO examiner in the Refusal noted, "[t]he applicant's configuration mark appears to be merely de facto functional." *See* Exhibit 1, p. 19, for the Refusal issued on December 14, 1990 as to the '158 Mark.[3] Whirlpool never addressed the functionality issue in the response

---

[2] The Certified Record of U.S. Patent and Trademark Office for the registration 1,711,158.
[3] *Id.*

to USPTO. *See* Exhibit 1, pp. 22-34, for the Responses submitted by Plaintiffs on June 11, 1991 and January 15, 1992.[4]

24. Whirlpool's use of the '158 Mark are as follows:



**The '871 Mark**

25. Goods identified in Whirlpool's initial application of the '871 Mark on January 16, 2017 are as follows:

> Machines for use in the processing or preparation of food and beverage; machines for chopping, grating, grinding, shredding, rasping, milling, pressing, crushing, cutting, slicing, kneading, emulsifying, liquefying, beating, blending, mixing or peeling food, including electric food preparation machines; electric beaters; electric mixers; electric egg mixer; electric blenders; aerated or carbonated beverage making machines; cold beverage making machines; food processors; electric coffee grinders; ice-cream makers; dishwashing machines; compactors including food waste and rubbish compactors; disposers including waste disposers.

*See* Exhibit 2, pp. 1-2, Trademark application of the '871 Mark.[5]

26. Despite Whirlpool cited the '158 Mark in the response to USPTO Examiner's Refusal, the refusal was continued and maintained on the following office action issued on October 14, 2017 and stated as follows:

> "A mark does not need to be merely descriptive of all the goods or services specified in an application. *In re The Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1300, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012); *In re Franklin Cnty. Historical Soc'y*, 104 USPQ2d 1085, 1089 (TTAB 2012). "A descriptiveness refusal is proper 'if the mark is descriptive of any of the [goods or] services for which registration is sought.'" *In re The Chamber of Commerce of the*

---

[4] *Id*.
[5] U.S. Patent and Trademark Office website printouts for the registration 5,510,871.

*U.S.*, 675 F.3d at 1300, 102 USPQ2d at 1219 (quoting *In re Stereotaxis Inc.*, 429 F.3d 1039, 1040, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005)).

Here, the applicant's goods include mixers/mixing machines. The applicant's prior registrations and applications with this mixer design were for goods that did not include mixers or mixing machines."

*See* Exhibit 3, pp. 2-3, for Office Action issued on October 14, 2017.[6]

27. On September 5, 2017, Whirlpool responded to the USPTO's office action. Whirlpool made clear that it was not claiming electric mixers; electric egg mixers as part of the goods related to the mixer." As a result, the electric mixers and electric egg misers are specifically excluded from the '871 Mark.

28. USPTO examiner expressed concern that the registration of the '871 Mark would inhibit competition and invite possibility of costly infringement suits. In Response, Whirlpool stated "this registration, however, does not prohibit competitor from entering the marketplace **with marks** which are not confusing similar to Applicant's shape mark or using Applicant's shape mark, or the Subject Mark, in a nominative – or otherwise fair – manner." *See* Exhibit 4, pp. 8-9, for Whirlpool's Response to Office Action on September 5, 2017.[7]

29. Goods eventually included in the '871 Mark upon the refusal of USPTO's Examiner are:

Machines for use in the processing or preparation of food and beverage; machines for chopping, grating, grinding, shredding, rasping, milling, pressing, crushing, cutting, slicing, kneading, emulsifying, liquefying, beating, blending, mixing or peeling food, ~~including electric food preparation machines; electric beaters;~~ **electric mixers; electric egg mixer**; [namely, electric food preparation machines;] electric blenders; aerated or carbonated beverage making machines; cold beverage making machines; food processors; electric coffee grinders; ice-cream makers; dishwashing machines; compactors ~~including~~ [namely,] food waste and rubbish compactors; disposers including waste disposers. *See* Ex. B of Compl.

30. "[E]lectric mixers; electric egg mixer" are specifically excluded from the '871 Mark.

---

[6] *Id.*
[7] *Id.*

31. The concerns raised by the USPTO examiner have materialized. Despite the fact that, that all mixer-related goods, "electric mixers; electric egg mixer" are specifically and explicitly excluded from the '871 Mark, Whirlpool have filed action against Counterclaimants where Counterclaimants entered the marketplace with their own marks, which are distinct to Whirlpool's mark. Whirlpool's misrepresentation to USPTO could constitute another ground against the incontestability of their trademark.

32. Whirlpool's uses of the '871 Mark are as follows:

 

33. Whirlpool do not allege that their trade dress is registered with the United States Patent and Trademark Office.

**<u>Whirlpool's Trademarks and Trade Dress Are Functional</u>**

34. Whirlpool described the product features in their trade literature as "the streamline shape has changed so little that Ahren's bullet silhouette is patented," and such change "trimmed the mixer down and reduced the price to $55."

> The name stuck and in 1919 Hobart introduced the KitchenAid Food Preparer for the home. The first 5-quart countertop KitchenAid mixers were not cheap:$189.50, or about $2,000 in today's dollars, and they weren't light-either. Weighing in at 65 pounds, the kitchen machine weren't exactly convenient either. That changed in 1936, when pioneering industrial designer Egmont Ahrens trimmed the mixer down and reduced the price to $55. The streamline shape has changed so little that Ahrens' bullet silhouette is patented.

*See* Exhibit 1, p. 5; *see also* Dkt. 6-22, for Plaintiffs' trade literature.

35. Moreover, the '158 Mark and the '871 Mark (with serial number ending in 926) are indisputably functional and invalid as evidenced by the utility patents.



*See* Exhibit 6 for Utility Patent 2,185,155 which is issued on December 26, 1939. Claim 1 of this utility patent states "a food handling apparatus of the character described the combination of a base, a pedestal at one end of said base… and a relatively thin narrow trim strip fastened to one of said casing parts and overlapping the other of said casing parts in assembled position to conceal the joint between said parts and provide a finished and attractive appearance." *Id.*, at p. 8. This clearly states that the mixer head, pedestal and base portion are basic parts of the stand mixer. The patent describes the base portion as the base structure within which are fixed a number of rubber or other resilient pads adapted to firmly support the device slightly above a supporting surface,

and to hold it firmly in place during operation. *Id.*, at p. 4. It also states the bullet-shaped head ensures that the cooling air stream passes over the entire body of the motor and other parts subject to heat. *Id.*, at p. 6. This also shown the functionality because Air flows more smoothly in a streamlined bullet-shaped head compared to a square-shaped head because the latter creates more resistance to the flow of air.

36. Further, Whirlpool applied another utility patent on May 7, 2015.



FIG. 1                    FIG. 2

*See* Exhibit 7 for the utility Patent U.S. 10,098,505 B2, which was issued on October 16, 2018. Claim I of this patent states that "the stand mixer having a mixer head and a pedestal, wherein the mixer head is pivotally coupled to the pedestal via a pivot pin between open and closed position relative to the pedestal." *Id.*, at p. 13. In the description of the patent, it describes the mixer generally includes an articulating mixer head and an L-shaped pedestal, wherein the L-shaped pedestal includes a base portion and an upstanding support arm. *Id.*, at p. 10. The pedestal is a weighted member…which supports the mixer head in a pivoting manner. *Id.* The mixer head

includes an upper housing and a lower gearcase which together encase a number of parts of the stand mixer, including, but not limited to a motor and associated electronic motor controls. *Id*. A primary drive assembly and a secondary drive coupling with hub, as wells as any number of gear assemblies and transmission components used to power the primary and secondary drives via the motor, are also supported from and pivot with the mixer head. *Id*. The base portion of the pedestal defines a landing for supporting a mixing vessel. *Id*.

37. Whirlpool's trademarks are invalid under the functionality doctrine. The Lanham Act does not afford for protecting or enforcing trademarks that describe product features or seek to establish a monopoly after the expiration of a utility patent.

38. Whirlpool do not allege that their trade dress is registered with the United States Patent and Trademark Office. Whirlpool seek trade dress protection of "sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base" of the mixer or mixing machine. *See* Compl., at ¶ 36. However, Whirlpool should not be afforded such protection because "the shape and design," "the bullet-shaped head" and "the base" and are described and claimed in Whirlpool's trade literature as functional, their expired patent, and other issued patents.

### The Product SM 1522

39. In 2020, Sanlida launched the stand mixer SM 1522. Sanlida offered to sell the stand mixer SM 1522 under the name of CookLee.

40. Around August 2020, Avoga listed the stand mixer SM 1522 for sale on Amazon.com. Avoga offered to sell the Product SM 1522 under the name of PHISINIC.

41. Seeing the success of Product SM 1522, other sellers approached Sanlida for purchase at the end of 2020 and 2021.

42. Product SM 1522 is different from Whirlpool's trademarks and trade dress. For example, the bottom of the mixer head of Product SM 1522 is circular, while the mixer head on Whirlpool' products is rectangular; Second, the right side of the base support has more of a protruding arc surface, while Whirlpool's products have an indented arc; Third, Product SM 1522's base has a hollow structure design while Whirlpool's products do not incorporate such design; Fourth, Product SM 1522 includes a dial-switch while Whirlpool's products have no such design; Lastly, Product SM 1522's head incorporate a circular ball design while Whirlpool's products do not.

43. The price of Product SM 1522 is more than forty-five percent (45%) lower than the price of Whirlpool's Stand Mixer. When considering the level of care exercised by prospective buyers, the high cost of Whirlpool's Stand Mixer, which runs into hundreds of dollars, necessitates a greater degree of caution and consequently lowers the likelihood of confusion.

44. An ordinary consumer would not simply be confused about the Product SM 1522 are the same as Whirlpool's. As evidenced by the customer reviews provided by Whirlpool, none of the customers who left reviews on Counterclaimant's products page confused the Product SM 1522 with Whirlpool's. *See* Exhibit 8 and Exhibit 9; *see also* Dkt. 6-12, 6-14 for customer reviews.

### Sanlida's First Contact With Galanz and Whirlpool

45. Two months after Galanz gained the controlling interest in Whirlpool China, on or about July 27, 2021, the Galanz team, including the person who was in charge of the North America region at that time, came to Sanlida to seek discuss the intentions of cooperation.

46. Specifically, Galanz expressed its interests in the Product SM 1522.

47. Upon information and belief, days after Galanz came to Sanlida's factory, in or about August 2021, Whirlpool started to file complaint with Amazon.

48. On or about September 15, 2021, Galanz North America signed purchase agreement for the Product SM 1522 with Sanlida.

49. While Whirlpool continuously filed complaint with Amazon, on or about May 27, 2022, Galanz Canada signed another purchase agreement for the Product SM 1522 with Sanlida.

50. Around the same time, Sanlida and its other customers including Counterclaimant Avoga sold the Product SM 1522 on Amazon and has received great reviews from customers around the United States who have purchased it.

51. With the purchased Product SM 1522 and the success of the Product SM 1522, Whirlpool filed legal action over the Product SM 1522 against Counterclaimants.

**Whirlpool's Other Actions Further Illustrate That Their Alleged Claims Against Counterclaimants Are A Sham Meant To Unfairly Stifle Competition.**

52. Notably, there were other lawsuits brought by Whirlpool for the same purpose to force competitors to exit the market of certain stand mixers with bowl capacity of approximately 5 gallons in size or smaller tend to be countertop mixers, and those lawsuits were eventually settled and reached consented judgment.

53. For example, in 2001, Whirlpool sued Springs Industries, Inc and Jo-ann Stores, Inc for trademark infringement of U.S. Registration No. 1,711,158 and the parties settled and reached consent judgment. *See* Exhibit 10.

54. In 2007, Whirlpool sued another corporation named New Buffalo Corporation for trademark infringement of U.S. Registration No. 1,711,158 and 2,647,204 and the parties also settled and reached consent judgment shortly. *See* Exhibit 11.

55. Upon information and belief these tactics have been employed by Whirlpool cross the country, but Whirlpool has carried out these tactics now in this district.

56. With the knowledge that none customer has ever confused the Product SM 1522 with Whirlpool's KitchenAid Mixers, Whirlpool filed the lawsuit against Counterclaimants. *See* Exhibit 8 and Exhibit 9; *see also* Dkt. 6-12, 6-14 for customer reviews.

## COUNT I: INVALIDITY AND/OR UNENFORCEABILITY OF TRADEMARKS AND TRADE DRESS

57. Counterclaimants repeat and incorporate by reference their responses to Paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58. This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the ongoing litigation and complaints against selling of the Counterclaimants' product and forbearance of manufacture and sale of other similar products, Counterclaimants seek relief from this Court.

59. Counterclaimants request an order declaring that Whirlpool's alleged trademarks and trade dress rights for the mixers lack the requisite legal requirements to be protectable and enforceable.

## COUNT II: NON-INFRINGEMENT OF TRADEMARKS AND TRADE DRESS

60. Counterclaimants repeat and incorporate by reference their responses to Paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. This is This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the ongoing litigation and complaints against selling of the Counterclaimants' product and forbearance of manufacture and sale of other similar products, Counterclaimants seek relief from this Court.

62. None of Counterclaimants' activities, including but not limited to the market and sale of products using their own federally-registered trademarks, constitute infringement of any trademarks or trade dress of Whirlpool's.

63. Counterclaimants are entitled to declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any allegedly enforceable trademarks or trade dress rights owned by Whirlpool relating to the sale of mixers, the Product SM 1522.

## COUNT III: UNFAIR COMPETITION

64. Counterclaimants repeat and incorporate by reference their responses to Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65. Whirlpool have competed unfairly in violation of Texas laws by misrepresenting or leading the public to believe that Counterclaimants' products are infringing in nature.

66. Competition in the marketplace drives businesses to provide higher quality products and services at lower prices. Competition causes lower prices, greater choice, and businesses that strive to satisfy customers. When businesses engage in conduct that harms competition, customers' choices in a given market are restricted, prices are higher, and the quality of products and services is lower.

67. Whirlpool have monopolized or attempted to monopolize the market for counter-top stand mixers in the United States by eliminating or harming competition through the use of objectively baseless trademark and trade dress claims, among other anticompetitive activities.

68. Whirlpool have monopolized or attempted to monopolize are the sale of certain stand mixers with bowl capacity of approximately 5 gallons in size or smaller tend to be countertop mixers in the United States.

69. Counterclaimants are competitors in the market, and Whirlpool's conduct described herein forced the Product MS 1522 to exit the market, a direct example of Whirlpool's elimination of competition in the counter-top stand mixers market. Before the new entrant's entry into the market, Whirlpool had no meaningful competition and customers had been forced to choose the overpriced KitchenAid mixers.

70. Whirlpool, through the unlawful exercise of market power in the market, compel competitors to refrain from competing on certain stand mixers with bowl capacity of approximately 5 gallons in size or smaller tend to be countertop mixers. In doing so, Whirlpool harm or eliminate competition in the market.

71. By their conducts, Whirlpool seek to raise competitor's costs, in part, by filing lawsuit against competitors and seeking preliminary injunction requesting recall and destroy the alleged infringing products.

72. Whirlpool's repetitive anticompetitive conduct directly harms competition by eliminating actual or would-be competitors, raising competitor's costs through the use of sham litigation, threats of litigation, and otherwise.

73. Whirlpool's pattern and practice of anticompetitive conduct presents a realistic, dangerous, and great probability of monopolizing the market, causing competitive harm, and enabling monopoly pricing through the exercise of Whirlpool's market power.

74. Whirlpool have the power to set prices and increase prices without concern that a competitor will enter the market and compete, in part, because Whirlpool's exclusionary and anticompetitive conduct, and use of the litigation process to harm competition.

75. By asserting knowingly invalid trademarks and trade dress claims against Counterclaimants, Whirlpool's anticompetitive behavior has caused Counterclaimants antitrust

injury and damages because Counterclaimants have been harmed in the form of, at least, litigation costs, lost sales, lost business reputation, lost market share, increased costs, impaired growth, and other financial, reputational, and business injury.

76. Whirlpool's trademarks and trade dress allegations and lawsuits are asserted in bad faith with the purpose of obtaining and maintaining monopoly power and restraining competition in the market. In fact, Whirlpool do not have any business justification for their anticompetitive conduct.

77. Counterclaimants are entitled to its actual damages, and attorneys' fees and to injunctive relief to enjoin Whirlpool's unlawful practices.

## DEMAND FOR JURY TRIAL

Wherefore, Counterclaimants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Counterclaimants pray that this Court enter judgment:

a. Dismissing the Complaint with prejudice;

b. Declaring that Whirlpool's trademarks and trade dress are invalid and/or unenforceable;

c. Declaring that Counterclaimants do not infringe Whirlpool's trademarks and trade dress;

d. That Whirlpool's conduct constitute unfair competition;

e. That Whirlpool's conducts violate Section 2 of the Sherman Act;

f. Finding that this case is exceptional and awarding Counterclaimants their attorneys' fees incurred in this action;

g. For an award of all costs incurred by Counterclaimants in this action; and

h. For all such other and further relief as this Court deems just and equitable.

Dated: August 5, 2022                             Respectfully Submitted,

By:    <u>/s/ Yu Hao Yao</u>
           Yu Hao Yao, Esq.
           Glacier Law LLP
           251 S Lake Ave, Ste. 910
           Pasadena, CA 91001
           mickey.yao@glacier.law
           Tel: +1 (323) 208-8882
           Fax: +1 (312)-801-4587
           ***Attorney for Defendants***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on August 5, 2023.

/s/ Yu Hao Yao
Yu Hao Yao, Esq.