IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION and WHIRLPOOL PROPERTIES, INC., <br><br>*Plaintiffs*, <br><br>v. <br><br>SHENZHEN SANLIDA ELECTRICAL TECHNOLOGY CO., LTD. and SHENZHEN AVOGA TECHNOLGY CO. LTD., <br><br>*Defendants*. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:22-cv-00027-JRG-RSP |

### **MEMORANDUM OPINION AND ORDER**

Before the Court is the Post-Trial Motion for Permanent Injunction, Attorneys' Fees, and Enhanced Judgment (the "Motion") filed by Plaintiffs Whirlpool Corporation and Whirlpool Properties, Inc. (collectively, "Whirlpool"). (Dkt. No. 178.) Having considered the Motion and related briefing, the Court finds that it should be and hereby is **GRANTED-IN-PART and DENIED-IN-PART**.

**I.   BACKGROUND**

On January 31, 2022, Whirlpool filed a complaint against Defendants Shenzhen Sanlida Electrical Technology Co., Ltd. and Shenzhen Avoga Technology Co. Ltd. (collectively, "Shenzhen Defendants") asserting federal and state law claims for trademark and trade dress infringement, dilution, and unfair competition. (Dkt. No. 1.) In conjunction with the Complaint, Whirlpool moved for a preliminary injunction to stop the sale, distribution, advertisement, or promotion of Defendants' allegedly infringing stand mixers. (Dkt. No. 6.) On June 14, 2022, after a hearing with the parties, the Court entered a preliminary injunction. (Dkt. No. 23.)

The case proceeded to trial on January 27, 2025. (Dkt. No. 169.) Whirlpool alleged that Shenzhen Defendants' SM-1522 stand mixer infringed and diluted Whirlpool's Trademark No. 1,711,158 (the "158 Mark") under the Lanham Act. (*E.g.*, Dkt. No. 166.) The 158 Mark protects the exterior design of Whirlpool's KitchenAid stand mixer. (Dkt. No. 131 at 2-4; *see also* Dkt. No. 1-2.) Whirlpool dropped its claims for infringement and dilution of Whirlpool's Trademark No. 5,510,871, trade dress infringement claims, and state law claims. (*Compare* Dkt. No. 131 *with* Dkt. No. 166.) Shenzhen Defendants denied Whirlpool's claims of trademark infringement and dilution. (*E.g.*, Dkt. No. 131.) Shenzhen Defendants did not raise any affirmative defenses at trial. (Dkt. No. 161.)

The Jury returned its verdict on January 29, 2025. (Dkt. No. 172.) The Jury found that Shenzhen Defendants willfully infringed and diluted the 158 Mark. (*Id.*) The Jury awarded Whirlpool $25,000,000 in actual damages and $2,045,644 in profits. (*Id.*)

On February 5, 2025, the Court entered an order setting the schedule for post-verdict, pre-judgment motions. (Dkt. No. 176.) Whirlpool filed the Motion following the Court's schedule seeking a permanent injunction, enhancement of profits, attorneys' fees, expert witness fees, and pre-judgment and post-judgment interest. (Dkt. No. 178.) In the Motion, Whirlpool also seeks an order that Shenzhen Defendants post immediate payment and a bond, in addition to a supersedeas bond for appeal. (*Id.*)

II.     **DISCUSSION**

    A.     **Injunctive Relief**

        1.     **Whirlpool is Entitled to a Permanent Injunction**

A plaintiff is not automatically entitled to a permanent injunction following a Lanham Act violation. 15 U.S.C. § 1116. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate

2

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. *eBay*, 547 U.S. at 391.

Whirlpool argues that it is entitled to a permanent injunction under the four *eBay* factors. (Dkt. No. 178 at 2-7.) Rather than discuss how the *eBay* factors do not support Whirlpool's request, Shenzhen Defendants merely contest the scope of the permanent injunction. (Dkt. No. 180 at 6-7.)

### a. Irreparable Injury

Whirlpool asserts that it cannot easily quantify the loss of control of its reputation embodied in the 158 Mark and the harm to its goodwill. (Dkt. No. 178 at 5-6.) Whirlpool also argues that it is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation [of a mark registered in the USPTO] in the case of a motion for a permanent injunction" and Shenzhen Defendants cannot rebut this presumption. (*Id.* at 6 (quoting 15 U.S.C. § 1116).)

Irreparable harm generally exists "if the injury cannot be undone through monetary relief." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 694 (N.D. Tex. 2015). "In trademark-infringement cases, courts often assess irreparable injury by looking at the likelihood of confusion and whether the plaintiff suffered a loss of control." *Viahart, LLC v. Chickadee Bus. Sols., LLC*, No. 6:19-cv-406-JCB, 2021 WL 6333033, at *13 (E.D. Tex. July 2, 2021), *report and recommendation adopted*, No. 6:19-cv-00406-RWS, 2022 WL 1262125 (E.D. Tex. Apr. 27, 2022). "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532,

3

542 (S.D. Tex. 2013) (citing *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999)).

Here, the Jury found that Whirlpool proved by a preponderance of the evidence that a likelihood of confusion exists. (Dkt. No. 172.) Additionally, the Court agrees that Whirlpool has suffered irreparable harm through the loss of control over the quality of products consumers associate with the 158 Mark and the damage to its goodwill. Whirlpool presented evidence at trial that the similarities between Whirlpool's KitchenAid stand mixer and the SM-1522 stand mixer confused potential customers who viewed them as the same company or affiliated. Whirlpool also presented evidence of the inferior quality of the SM-1522 stand mixer compared to the KitchenAid stand mixer.[1]

Therefore, this factor favors the issuance of a permanent injunction.

### b.    Inadequate Remedy at Law

Whirlpool asserts the same argument as the first *eBay* factor. (Dkt. No. 178 at 5-6.) Specifically, that Whirlpool cannot easily quantify the loss of control of its reputation embodied in the 158 Mark and the harm to its goodwill, and, thus, monetary damages are inadequate. (*Id.*)

The Court agrees that Whirlpool's loss of control demonstrates that money damages cannot adequately compensate it for the unauthorized use of the 158 Mark. *See, e.g.*, *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008). Whirlpool's reputation and goodwill also cannot be easily quantified. Therefore, there is no adequate monetary remedy. Further, "[t]here seems little doubt" that monetary damages are inadequate to compensate a trademark owner for continuing acts of an infringer. *Abraham v. Alpha Chi Omega*, 708 F.3d 614,

---

[1] Concerning Whirlpool's argument that there is a presumption of irreparable harm, the Fifth Circuit has avoided "expressly adopting this presumption of irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303 (5th Cir. 2008). Therefore, the Court will not address or apply a blanket presumption.

627 (5th Cir. 2013). Here, Shenzhen Defendants have violated, and continue to violate, the Preliminary Injunction. (*E.g.*, Dkt. Nos. 143, 52.)

Therefore, this factor favors the issuance of a permanent injunction.

### c.     Balance of Hardships

Whirlpool asserts that "harm to Shenzhen is non-existent" because "[a]n injunction would merely require Shenzhen to comply with federal law." (Dkt. No. 178 at 7.) Whirlpool asserts that contrary to Shenzhen Defendants' non-existent harm, "Whirlpool would . . lose control of its trademark . . . ." (*Id.*) Whirlpool also contends that if Shenzhen Defendants continue to sell the SM-1522 stand mixer or similar stand mixer, Whirlpool will have to sue again and incur more attorneys' fees. (*Id.*)

The Court entered a Preliminary Injunction. (Dkt. No. 23.) Shenzhen Defendants violated the Preliminary Injunction. (Dkt. Nos. 136, 152.) The Court held Shenzhen Defendants in contempt and sanctioned them $95,000 for the violation. (Dkt. Nos. 136, 152.) The Jury found that Shenzhen Defendants willfully infringed and diluted the 158 Mark. (Dkt. No. 172.) If Shenzhen Defendants continue selling the SM-1522 stand mixer or similar stand mixer, Whirlpool will continue to face hardship through ongoing confusion and reputational harm. One purpose of a permanent injunction is to obviate the need for multiple lawsuits and guard against future infringement. *See Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011). Without entry of a permanent injunction, Whirlpool will likely have to continue litigating future infringement by Shenzhen Defendants, costing Whirlpool more time and resources. Additionally, the Court agrees that a permanent injunction would merely require Shenzhen Defendants to comply with federal law. *E.g.*, *Viahart, LLC*, 2021 WL 6333033, at *13.

Therefore, this factor favors the issuance of a permanent injunction.

#### d. Public Interest

Whirlpool asserts that "[a] permanent injunction would support the goals of trademark laws, specifically, protecting the public from confusion or deception." (Dkt. No. 178 at 7.)

The Court agrees. "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-cv-00227-ALM, 2020 WL 4016110, at *17 (E.D. Tex. July 16, 2020) (quoting *Quantum Fitness*, 83 F. Supp. 2d at 832).

Therefore, this factor favors the issuance of a permanent injunction.

Accordingly, considering all four *eBay* factors, the Court finds that the evidence of this case supports the entry of a permanent injunction.

### 2. Scope of the Permanent Injunction

"When fashioning an injunction in a suit such as this, the court must give careful consideration to the possibility that a defendant found to have either infringed the plaintiff's mark or unfairly competed with the plaintiff will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir. 1985). "As a general principle, 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Lion Health Servs. Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

The Court has reviewed Whirlpool's proposed terms of the permanent injunction provisions. (Dkt. No. 178-2.) The Court finds that most of the proposed provisions are narrowly tailored, follow the Preliminary Injunction, and are particularly warranted given Shenzhen Defendants' willful conduct and violations of the Preliminary Injunction. However, the parties dispute the following provision of Whirlpool's proposed permanent injunction:

> importing, manufacturing, producing, distributing, circulating, selling, selling for importation, offering for sale, advertising, promoting, displaying, presenting on the internet on websites available in the United States, or otherwise using any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation U.S. Trademark Registration Nos. 1,711,158 including any Stand Mixer that includes a bullet shaped head with rounded edges, a protruding attachment hub, ***or*** a sloped and tapered neck in a manner, that is ***similar to*** the appearance of the KitchenAid Stand Mixer or the SM-1522 Stand Mixers.

(*Id.* ¶ 13(a)(ii) (emphasis added).)

Shenzhen Defendants argue that Whirlpool's proposed provision is not narrowly tailored. (Dkt. No. 180 at 7.) Shenzhen Defendants contend that "the injunction order should be narrowly tailored to enjoin only the SM-1522 stand mixers and any stand mixers that are ***'confusingly similar' to all or most of the elements*** of Plaintiff's '158 Mark." (*Id.* at 8.) Shenzhen Defendants also argue that "the elements of Plaintiff's '158 Mark should be clearly identified as including a bullet shaped head with rounded edges, a protruding attachment hub, ***and*** a sloped and tapered neck." (*Id.* (emphasis added).)

Whirlpool requests that the Court permanently enjoin "the [p]roduction of any type of Stand Mixer by Shenzhen that is similar to KitchenAid's iconic shape . . ., which includes Stand Mixers that include a bullet shaped head with rounded edges, Stand Mixers that include a protruding attachment hub, or Stand Mixers that include a sloped and tapered neck." (Dkt. No. 178 at 5.) Whirlpool argues that its proposed provision seeks to prohibit Shenzhen Defendants "from using any of Whirlpool's three most important elements, or any of its three distinctive characteristics." (Dkt. No. 181 at 2.) Whirlpool asserts that the Court should enter a broader injunction because Shenzhen Defendants willfully infringed and diluted the 158 Mark. (*Id.*)

The Court finds both Whirlpool's proposed provision and Shenzhen Defendants' proposed revision overbroad. The dispute turns on the inclusion of "elements" or "distinctive characteristics" of the 158 Mark in the permanent injunction. However, the Court does not find it appropriate, ***at***

7

*the post-verdict stage*, to establish "elements" or "distinctive characteristics" of the 158 Mark. The 158 Mark protects the exterior design of Whirlpool's KitchenAid stand mixer:



(Dkt. No. 1-2.) The 158 Mark does not list any "elements" or "distinctive characteristics." (*Id.*) This is also not something that either party raised before trial, and the Court declines to address it now.

Accordingly, consistent with the Preliminary Injunction, the Court will exclude the alleged "elements" or "distinctive characteristics" of the 158 Mark. Specifically, provision 13(a)(ii) will read as follows:

> importing, manufacturing, producing, distributing, circulating, selling, selling for importation, offering for sale, advertising, promoting, displaying, presenting on the

internet on websites available in the United States, or otherwise using any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of U.S. Trademark Registration No. 1,711,158.

**B.     Enhanced Profits**

Whirlpool next asks the Court to enhance the Jury's profit award under the Lanham Act. (Dkt. No. 178 at 8-9.) Specifically, Whirlpool asks the Court to double the Jury's profit award from $2,045,644 to $4,091,288. (*Id.* at 9.) Whirlpool asserts that Shenzhen Defendants did not disclose all sales of the SM-1522 stand mixer and, thus, the Jury did not include the sales of those products in its profits award. (*Id.* at 8-9.)

Shenzhen Defendants respond that enhancement is not appropriate because "the jury awarded every penny of Defendants' sales revenues of the accused product to [Whirlpool], [Whirlpool is] already overcompensated as no deductions were made to reflect the actual profits." (Dkt. No. 180 at 7-9.) Shenzhen Defendants also argue that "Sanlida confirmed its compliance with the preliminary injunction order, including 'Sanlida disclosed all known U.S.-based resellers', and also paid [Whirlpool] $95,000 pursuant to the Court's order." (*Id.* at 9.)

"If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court ***may in its discretion*** enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a) (emphasis added).

The Court does not find enhancement appropriate. This is not a case where Whirlpool was inadequately compensated for Shenzhen Defendants' trademark infringement and dilution. On the contrary, the Jury awarded Whirlpool more monetary relief than requested.[2] While Whirlpool

---

[2] In their opposition, Shenzhen Defendants argued that Whirlpool is "already overcompensated as no deductions were made to reflect the actual profits." (Dkt. No. 180 at 7-9.) While Shenzhen Defendants are correct that no deductions were made, Shenzhen Defendants bore the burden to "prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Shenzhen Defendants did not present any evidence or argument of costs or deductions at trial. Therefore, the Jury awarded profits based on the evidence presented at trial.

argues that there were more profits that it is entitled to due to Shenzhen Defendants' failure to disclose that information in discovery, the Court "declines to use its discretion to further enhance an already substantial damages award based on nothing more than [Whirlpool's] own assertions that [it] suffered additional un-quantified damages." *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 710 (S.D. Tex. 2013).

Accordingly, the Court declines to exercise its discretion to enhance the Jury's profits award.

### C. Attorneys' Fees

Moving to Whirlpool's next request, Whirlpool seeks attorney fees under 15 U.S.C. § 1117(a). (Dkt. No. 178 at 9-12.) The Lanham Act permits a court to award reasonable attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). A case is exceptional "where the prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an 'unreasonable manner.'" *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019). A case can also be exceptional when "the defendant's trademark infringement 'can be characterized as malicious, fraudulent, deliberate, or willful.'" *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l*, 951 F.2d 684, 696-97 & n. 25 (5th Cir. 1992) (quoting S. Rep. No. 93-1400, at 7136 (1974)). However, "[a] jury finding of willfulness does not bind the trial court in determining whether [a] case is 'exceptional.'" *Id.* at 697.

#### 1. This Case is Exceptional

Whirlpool argues that this case is exceptional because the Jury found that Shenzhen Defendants willfully infringed and diluted the 158 Mark. (Dkt. No. 178 at 9-10.) Whirlpool also argues that "Shenzhen's attempts to continue its willful and intentional infringement even after Ordered by the Court to stop" supports an exceptional finding. (*Id.* at 10.) Whirlpool asserts that

10

"if Shenzhen had ceased sales when approached by Whirlpool outside of litigation, if Shenzhen had complied with the Preliminary Injunction Order, if Shenzhen would have fully disclosed its actions in discovery, if Shenzhen resisted from presenting frivolous defenses in this matter, Whirlpool would not have incurred substantial attorneys' fees." (*Id.* at 11.)

Shenzhen Defendants respond that attorneys' fees are unwarranted because their defenses were not frivolous, and Whirlpool failed "to demonstrate bad faith or fraud by [Shenzhen] Defendants." (Dkt. No. 180 at 11-12.) Shenzhen Defendants argue that while "the jury found the infringement was willful only on a preponderance standard," "[f]or the exceptional finding, the Court must find that [Shenzhen Defendants] infringed willfully by a clear and convincing standard." (*Id.* at 10.) Shenzhen Defendants further assert that they "have substantially complied with the preliminary injunction order and should not be sanctioned again." (*Id.* at 11-12.)

Whirlpool is unquestionably the prevailing party in this action. The Jury found for Whirlpool on every issue litigated at trial and awarded Whirlpool damages in excess of what it sought. However, a Court's inquiry for attorneys' fees is not based on the ultimate outcome and trial verdict. Rather, the Court must consider the totality of the circumstances to determine if Shenzhen Defendants' position was frivolous or objectively unreasonable.

As an initial matter, the Court disagrees with Shenzhen Defendants that Whirlpool must establish that this case is exceptional by clear and convincing evidence. Instead, the party seeking attorneys' fees must prove exceptionality by "a preponderance of the evidence." *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 382 (5th Cir. 2024) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014)).

Based on the totality of the circumstances, the Court finds that Whirlpool has established, by a preponderance of the evidence, that this case is exceptional based on Shenzhen Defendants'

11

willful and intentional actions. Here, the Jury found that Shenzhen Defendants infringed and diluted the 158 Mark willfully by a preponderance of the evidence. The Court agrees with the Jury's willfulness finding.

Trademark infringement is willful "if it is done voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion and with the intent to cause confusion, to cause mistake, or to deceive." *Quick Techs., Inc. v. The Sage Grp., PLC*, 313 F.3d 338, 349 n.9 (5th Cir. 2002) (cleaned up). Whirlpool presented evidence that Shenzhen Defendants intentionally copied the 158 Mark with the intent to cause consumer confusion. For example, Whirlpool presented evidence of Shenzhen Defendants' targeted KitchenAid advertising campaigns for the SM-1522 stand mixer, which copied Whirlpool's KitchenAid advertising taglines and stated that the SM-1522 stand mixer works with "KA branded Accessories." Whirlpool's experts showed that the similarities between the KitchenAid stand mixer and the SM-1522 stand mixer confused potential customers who viewed them as the same company or affiliated. While Shenzhen Defendants' only live witness testified that they did not consider the KitchenAid stand mixer in the design of the SM-1522 stand mixer, the evidence presented at trial told a different story. Thus, the preponderance of the evidence establishes an intentional and willful case of copying with an intent to confuse potential customers and divert sales from Whirlpool.[3]

Accordingly, the Court finds that this case is exceptional.

### 2.     Attorneys' Fees Are Not Appropriate

Under the Lanham Act, the court "in exceptional cases *may* award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). "The district court *must* address

---

[3] Whirlpool also contends that this case is exceptional based on Shenzhen Defendants litigating this case in an unreasonable manner. Since the Court finds this case exceptional based on the evidence of willfulness, the Court need not reach this argument.

this issue 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (emphasis added) (quoting *Octane*, 572 U.S. at 554).

A finding of exceptionality does not require the Court to award attorneys' fees under the Lanham Act. The Court agrees with Whirlpool that "[d]eterrence and compensation are both compelling considerations for an award of attorneys' fees." (Dkt. No. 178 at 10 (citing *Octane Fitness*, 572 U.S. at 554).) Here, however, the Court finds that an award of attorney's fees is not necessary to advance considerations of compensation or deterrence. The Jury awarded Whirlpool the entirety of the profits it requested. (Dkt. No. 172.) The Jury also awarded actual damages of more than double what Whirlpool actually sought. (*Id.*) The Court will enter a permanent injunction. (*Supra* Section II.A.) The Jury's increased damages award, coupled with the forthcoming permanent injunction, more than adequately compensates Whirlpool and deters similar future conduct. An attorneys' fee award is not also needed for deterrence.

Accordingly, the Court declines to exercise its discretion to award attorneys' fees.

### D. Expert Witness Fees

Next, Whirlpool requests that the Court award it its expert witness fees. (Dkt. No. 178 at 13-14.) Whirlpool recognizes that the Lanham Act does not discuss expert witness fees but contends that "the court may 'invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute' with 'a finding of fraud or abuse of the judicial process.'" (*Id.* at 13 (quoting *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008)).) Whirlpool argues that "the only reason Whirlpool was required to use experts was because Shenzhen continued to pursue unsupported defenses and continued to violate the Court's Orders." (*Id.* at 14.)

Shenzhen Defendants respond that Whirlpool has failed to justify its request for expert fees under the Lanham Act or the Court's inherent authority. (Dkt. No. 180 at 12-14.) Shenzhen Defendants emphasize that the Lanham Act does not explicitly authorize expert witness fees. (*Id.*)

The Court does not find it appropriate to award expert fees under the Lanham Act or the Court's inherent authority. The Lanham Act provides that prevailing parties are entitled to "the costs of the action." 15 U.S.C. § 1117(a). When a federal statute refers simply to "costs," courts "are limited to awarding the costs specified in 28 U.S.C. §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339 (2019). Without "express authority" in the statute's text, the court "may not award litigation expenses" not included in these statutes. *Id.* The Court cannot award expert witness fees, unless the expert is court-appointed, within the narrow confines of 28 U.S.C. §§ 1821 or 1920. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). Therefore, the Lanham Act conveys no authority for the Court to award expert witness fees.[4]

The Court also does not find that an award of expert witness fees as a form of a "sanction" under the Court's inherent authority warranted. In addition to its discretion to find a case exceptional, "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *See Takeda Chem.*, 549 F.3d at 1391. "The use of this inherent power is reserved for cases with 'a finding of fraud or abuse of the judicial process.'" *Id.* (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)). Specifically, sanctions in this context are appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (collecting cases) (cleaned up).

---

[4] The Lanham Act also makes the award of costs "subject to the principles of equity." 15 U.S.C. § 1117(a). Based on the facts and circumstances of this case, the Court does not find that awarding Whirlpool expert witnesses fees as a "cost" under the Lanham Act would further the principles of equity.

14

The Court disagrees that Shenzhen Defendants "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. While Shenzhen Defendants' defenses ultimately did not prevail, the Court concludes that in pursuing those defenses they did not exceed zealous advocacy. As for Shenzhen Defendants' violation of Court orders, Whirlpool moved for contempt and the Court granted the motion and sanctioned Shenzhen Defendants $95,000.[5] (Dkt. Nos. 136, 152.) Shenzhen Defendants paid Whirlpool $95,000 according to the Court's order. (Dkt. No. 154.) The Court does not find an additional sanction in the form of expert fees appropriate. Further, as noted, the Jury found for Whirlpool on all issues tried and awarded Whirlpool its specifically requested profits and over double the actual damages it sought. (Dkt. No. 172.)

Accordingly, the Court declines to exercise its discretion to award expert witness fees.

### E.      Pre-Judgment and Post-Judgment Interest

#### 1.      Pre-Judgment Interest

Whirlpool seeks pre-judgment interest based on the entire award that Whirlpool contends it is entitled to, including the Jury's damages award, the enhanced profits award it seeks, the attorneys' fees it seeks, and the expert fees it seeks. (Dkt. No. 178 at 14-15.) Shenzhen Defendants respond that "[p]rejudgment interest is not provided for under the Lanham Act" and "[t]he Fifth Circuit has yet to make a determination on the issue of prejudgment interest under § 1117(a)." (Dkt. No. 180 at 14.) Shenzhen Defendants also argue that even if the Court were to award pre-judgment interest, the Court should limit it to the Jury's profits award. (*Id.* at 15.)

The Lanham Act does not explicitly state that a prevailing party can recover pre-judgment interest. 15 U.S.C. § 1117. Courts have discretion to award pre-judgment interest in appropriate

---

[5] The Court recognizes that Whirlpool has a pending motion for further contempt and sanctions, which the Court will address below. (*Infra* Section II.G.)

15

cases. *Clearline Techs.*, 948 F.Supp.2d at 712 (collecting cases). However, circuit courts are split as to *when* pre-judgment interest is appropriate.[6] *Id.* The Fifth Circuit has not addressed when a court should award pre-judgment interest for Lanham Act violations.

Here, a pre-judgment interest award is not appropriate. "In cases where the plaintiff has proven an actual loss of money or opportunity or other monetary damages, or as in patent cases, where a statute provides for a minimum amount of damages (the reasonable royalty), prejudgment interest is awarded to ensure that the plaintiff is placed in as good a position as he would have been, absent defendant's offending conduct." *Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-cv-00385-ALM-CMC, 2017 WL 2903175, at *13 (E.D. Tex. Jan. 20, 2017) (citing *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983)). Here, Whirlpool presented evidence that Shenzhen Defendants sold $2,045,644 worth of infringing SM-1522 stand mixers. The Jury awarded Whirlpool profits in the amount of $2,045,644. (Dkt. No. 172.) Whirlpool presented evidence that it suffered actual damages in the amount of $11,537,000. The Jury awarded Whirlpool actual damages in the amount of $25,000,000—over double the amount Whirlpool sought. (Dkt. No. 172.) The Court finds that "Whirlpool is placed in as good a position as [it] would have been, absent [Shenzhen Defendants'] offending conduct." *Neal Techs.*, 2017 WL 2903175, at *13. An award of pre-judgment interest would be an inequitable windfall to Whirlpool.

Accordingly, the Court declines to exercise its discretion to award pre-judgment interest.

---

[6] The Seventh Circuit and Tenth Circuit have held that "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay." *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236-37 (10th Cir. 2000). The Second Circuit only awards pre-judgment interest in "exceptional" cases. *See Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990). The Eight Circuit has held that a "district court has discretion to deny prejudgment interest in Lanham Act cases." *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 743 (8th Cir. 2000). The Fourth Circuit has found that the omission of pre-judgment interest in the statute means it is unavailable under Section 1117(a). *Ga.–Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015).

### 2. Post-Judgment Interest

In addition to pre-judgement interest, Whirlpool requests "post-judgment interest on the monetary award found by the jury, any enhancement by the Court, attorneys' fees, as well as on any prejudgment interest." (Dkt. No. 178 at 15.) Shenzhen Defendants respond that "post-judgment interest under 28 U.S.C. § 1961(a) should not encompass any enhancements, attorneys' fees, expert fees, or prejudgment interest." (Dkt. No. 180 at 15.)

Whirlpool is entitled to post-judgment interest. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). "Post-judgment interest is awarded as a matter of course." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). This is not a matter of discretion. *Id.* Post-judgment interest should be assessed on the full amount of the money judgment "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of judgment." 28 U.S.C. § 1961.

Accordingly, Whirlpool is entitled to post-judgment interest on the money judgment entered in this action. As discussed above, the Court does not find any enhancements, attorneys' fees, expert fees, or pre-judgment interest warranted. Therefore, Whirlpool's post-judgment interest will be on the monetary award found by the Jury, which the Court will include in the forthcoming Final Judgment.

### F. Bond Request

Finally, Whirlpool requests that the Court order Shenzhen Defendants "to bond the full amount of any profits earned from the infringement in the U.S., enhancement thereto, and any award of attorneys' fees before Shenzhen is permitted to proceed before this Court or the Court of Appeals in this matter." (Dkt. No. 178 at 1-2.) This requested bond would be in addition to any supersedeas bond required for appeal. (*Id.* at 2.) Whirlpool asserts that an additional bond is

necessary "to protect the judgment." (*Id.* at 1-2.) Shenzhen Defendants respond that Whirlpool's additional bond request is premature because Shenzhen Defendants have not filed an appeal or requested a stay pending appeal. (Dkt. No. 180 at 15-16.)

Whirlpool provides no authority that a bond in addition to a supersedeas bond is appropriate or required. Rule 7 of the Federal Rules of Appellate Procedure states that "[i]n a civil case, the district court *may* require *an appellant* to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." However, the Court has discretion to require such an additional bond and the rule requires an appellant. Here, Shenzhen Defendants have not filed an appeal. The Court finds that if Shenzhen Defendants file an appeal, a supersedes bond is sufficient to protect the Final Judgment. Further, the Court does not find an additional bond "to proceed before this Court" appropriate or necessary. While Whirlpool does not have confidence in Shenzhen Defendants' ability to follow the Court's injunction, that is not a basis to require an additional bond at this time. However, the Court reminds Shenzhen Defendants of the importance of following a court's orders and that any violations will result in consequences, such as contempt of court and criminal or civil penalties.

Accordingly, the Court declines to order Shenzhen Defendants to post an immediate payment and bond in addition to a supersedeas bond.

**G.     Whirlpool's Deferred Contempt and Sanctions Motion (Dkt. No. 157)**

Prior to trial, Whirlpool filed a Further Motion for Contempt and Sanctions. (Dkt. No. 157.) The Court deferred ruling on the motion until after the jury trial. Whirlpool's motion seeks additional contempt sanctions based on Shenzhen Defendants' failure to disclose their sales of SM-1522 stand mixers to THE ESSENTIAL in violation of the Preliminary Injunction. (Dkt. No. 157.) Whirlpool sought $300,000 in further contempt sanctions. (*Id.* at 9.)

The Court declines to exercise its discretion to find Shenzhen Defendants in further civil contempt and order additional monetary sanctions. "Civil contempt can serve two purposes. It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1995). Whirlpool has already been compensated for Shenzhen Defendants' infringement and dilution. The Jury found for Whirlpool on every issue tried, awarded Whirlpool all its requested profits, and awarded Whirlpool over double the actual damages Whirlpool sought. (Dkt. No. 172.) The Court has also found that permanent injunctive relief is appropriate. If Shenzhen Defendants violate the Court's forthcoming permanent injunction, Whirlpool can raise a request for contempt and sanctions at that time.

Accordingly, the Court **DENIES** Whirlpool's Further Motion for Contempt and Sanctions (Dkt. No. 157).

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART and DENIES-IN-PART** Whirlpool's Post-Trial Motion for Permanent Injunction, Attorneys' Fees, and Enhanced Judgment (Dkt. No. 178) as set forth above. The Court will issue Final Judgement consistent with this Order.

**So ORDERED and SIGNED this 25th day of March, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE